STATE

v.

David LaROCHE.

No. 2005–274–C.A.

Supreme Court of Rhode Island.

June 14, 2007.

Lauren S. Zurier, Esq., Providence, for Plaintiff.

Edward J. Romano, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, David LaRoche, appeals from a Superior Court order denying his

motion to correct an illegal sentence. The sentence at issue was imposed after he pled *nolo contendere* to a charge of perjury. The defendant challenges the court's authority to condition his sentence upon a consent order concerning the payment of a previously established restitution obligation. Perceiving no merit in the defendant's contentions, we affirm the order of the Superior Court and thereby affirm the sentence.

## Facts [1] and Procedural History

In 1993, a Washington County jury convicted defendant of two counts of obtaining money by false pretenses and three counts of conspiracy to obtain money by false pretenses (criminal case number W1/91–347A) for several transactions in which defendant defrauded two Rhode Island credit unions for loans totaling over $4 million by using straw borrowers. The trial justice sentenced defendant to concurrent five-year terms of imprisonment for the false-pretenses counts, and suspended five-year sentences for the conspiracy counts. The suspended sentences carried five years of probation and ran consecutively to the false-pretenses counts. In addition, defendant was fined a total of $25,000 and ordered to make restitution for the money he falsely acquired. In 1998, after this Court affirmed defendant's conviction, *see State v. LaRoche*, 683 A.2d 989 (R.I.1996) (*LaRoche I*,) the Superior Court entered a consent order establishing his restitution obligation at $4,452,909.12, payable to the Rhode Island Depositors' Economic Protection Corporation (DEP-

CO), the successor in interest to the defrauded credit unions.

Almost two years after entering into the restitution agreement, defendant was accused of falsifying his assets and ability to make restitution. He subsequently was charged with two counts of perjury and one count of filing a false document. The defendant negotiated a plea agreement in which he pled *nolo contendere* to one count of perjury (criminal case number P2/00–2122A), acknowledging that he knowingly had executed an affidavit of financial condition containing false material declarations and later testified to the truth of the affidavit at a hearing to determine his ability to pay restitution. He received a ten-year suspended sentence, with ten years of probation, to run consecutively to the W1/91–347A sentence. In return, the state dismissed the two remaining counts, and the state agreed that it would neither object to nor recommend parole for defendant at his future parole hearing. In addition, as a condition of the sentence, defendant agreed to execute a consent order (2000 consent order) establishing a payment schedule for his restitution obligation in the W1/91–347A case.

This consent order, dated June 23, 2000, required defendant to make an initial $300,000 restitution payment by August 15, 2000, and subsequent payments of $100,000, or 25 percent of his after-tax income, whichever was greater, on or before July 1 of each succeeding year.[2] Although defendant complied with the consent order for a time, on November 15, 2002, the state commenced probation-revo-

---

**1.** A more expansive account of the infamous background of this case may be found in *State v. LaRoche*, 683 A.2d 989 (R.I.1996) (*LaRoche I*) and *State v. LaRoche*, 883 A.2d 1151 (R.I. 2005) (*LaRoche II*).

**2.** The consent order also required defendant to "(1) cooperate with [DEPCO] by providing

certain financial documents and disclosing financial information when requested, (2) provide DEPCO with an updated affidavit of financial condition on an annual basis, and (3) provide DEPCO with copies of his tax returns." *LaRoche II*, 883 A.2d at 1153.

cation proceedings against him when he failed to make a scheduled payment. At the probation-revocation proceeding, the hearing justice determined that defendant had violated the terms of his probation and sentenced him to serve four of the five years of his suspended sentence in case number W1/91–347A.[3] The suspended sentence associated with his perjury conviction, however, was not disturbed. Later, on December 2, 2004, defendant once again was determined to be a violator of his probation for failing to make another restitution payment. Accordingly, the court sentenced defendant to serve the final year of his W1/91–347A suspended sentence and two of the remaining ten years of his perjury sentence.

Thereafter, defendant filed a motion to correct what he contended was an illegal sentence in accordance with Rule 35 of the Superior Court Rules of Criminal Procedure. The basis for his motion concerned the court's authority to make the 2000 consent order a condition of his sentence for the perjury conviction. The defendant asserted that G.L.1956 §§ 12–28–5 and 12–28–5.1, promulgated as part of the Victim's Bill of Rights (VBOR), limited the Superior Court's authority to impose a restitution order to situations in which a victim suffers economic loss directly attributable to the conduct for which a defendant has been convicted. Because no economic loss resulted from his perjurious conduct, defendant contended, the court was not authorized under law to condition his sentence upon the payment of restitution related to his previous conviction for obtaining money under false pretenses. He also asserted that the illegality of the

sentence did not dissipate simply because he voluntarily agreed to the consent order as a condition of his sentence.

The state, alternatively, argued that in accordance with G.L.1956 § 12–19–32, the court had specific authority to order restitution as part of defendant's criminal sentence for perjury, and it emphasized further that defendant voluntarily had agreed to enter into the 2000 consent order as a condition of his sentence. Moreover, the state observed that defendant's perjury conviction was directly related to the original case for which restitution was ordered.

At the conclusion of the hearing, the hearing justice ruled that the court's authority to order restitution was not limited solely to the perjury charge. The hearing justice also noted that the court would not endorse defendant's attempt to avoid the consequences of an agreement he entered into of his own accord. An order denying defendant's motion was entered on September 14, 2005, from which defendant now appeals.[4]

## Standard of Review

■■■■ When presented with questions of statutory interpretation this Court engages in a *de novo* review. *State v. Oliveira*, 882 A.2d 1097, 1110 (R.I.2005). As we have noted previously, "when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Johnston v. Poulin*, 844 A.2d 707, 711 (R.I.2004)). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *Id.*

---

**3.** We affirmed that sentence in *LaRoche II*, 883 A.2d at 1153.

**4.** The defendant filed his notice of appeal on July 15, 2005, approximately two months before the order denying the motion was en-

tered. Because premature appeals are not fatal, we will treat the appeal as if it had been filed in a timely manner. *See Russell v. Kalian*, 414 A.2d 462, 464 (R.I.1980).

(quoting *Johnston*, 844 A.2d at 711). It is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision. *Id.*

## Discussion

The defendant first contends that a restitution order in a criminal case is permissible only when the beneficiary of the order has sustained "monetary loss as a direct result of the criminal conduct for which the defendant is being sentenced." Consequently, defendant asserts, the Superior Court lacked authority to impose the 2000 consent order as a condition of his perjury sentence because the "economic loss contained in the restitution" obligation was not caused by defendant's mendacious conduct in committing the perjury. The state, however, maintains that defendant's argument misconstrues the interaction between the Victim's Bill of Rights and § 12–19–32.

■ Section 12–28–5 of the VBOR requires the court to enter a civil judgment against a defendant following final conviction of a felony after a trial by jury.[5] The judgment conclusively establishes the defendant's liability to the victim for personal injury or loss of property incurred as "a direct and proximate cause of the felonious conduct of which the defendant has been convicted." Section 12–28–5(a). As we have recognized, the Legislature intended this statute as a "procedural mechanism or shortcut, whereby the liability of the defendant is established, yet damages must still be proven in an 'appropriate judicial proceeding[.]'" *Seddon v. Bonner*, 755 A.2d 823, 826 (R.I.2000) (quoting § 12–28–5). Expanding on the contours of § 12–28–5, the Legislature subsequently enacted § 12–28–5.1,[6] which provides for the automatic entry of a civil judgment in favor of a victim when the court orders "financial restitution to the victim of a crime of which the defendant has been convicted or

5. General Laws 1956 § 12–28–5, entitled "Civil judgment against defendant," provides:
"(a) Upon his or her final conviction of a felony after a trial by jury, a civil judgment shall automatically be entered by the trial court against the defendant conclusively establishing his or her liability to the victim for any personal injury and/or loss of property that was sustained by the victim as a direct and proximate cause of the felonious conduct of which the defendant has been convicted. The court shall notify the victim at his or her last known address of the entry of the civil judgment in his or her favor and inform him or her that he or she must establish proof of damages in an appropriate judicial proceeding in order to recover for his or her injury or loss. This section shall not apply to crimes set forth in title 31 arising from the operation of a motor vehicle.
"(b) For the purposes of this section, 'victim' is one who has sustained personal injury or loss of property directly attributable to the felonious conduct of which the defendant has been convicted. In homicide

cases, judgment shall enter for the benefit of those parties eligible to commence a wrongful death action pursuant to chapter 7 of title 10."

6. Section 12–28–5.1 entitled, "Restitution" reads:
"When the court orders a defendant to make financial restitution to the victim of a crime of which the defendant has been convicted or to which the defendant has pleaded guilty or nolo contendere, a civil judgment shall automatically be entered by the trial court against the defendant on behalf of the victim for that amount. If payment is not made by the defendant within the period set by the court, the civil judgment for the amount of the restitution ordered, plus interest at the statutory amount from the date of the offense, plus costs of suit, including reasonable attorney's fees, shall be enforceable by any and all means presently available in law for the collection of delinquent judgments in civil cases generally."

to which the defendant has pleaded guilty or nolo contendere[.]" Section 12–28–5.1; *see also Bandoni v. State,* 715 A.2d 580, 594 (R.I.1998).

■ The defendant contends that §§ 12–28–5 and 12–28–5.1 limit the court's general authority to order restitution as part of a criminal sentence to the monetary loss directly resulting from the criminal conduct for which a defendant is being sentenced. In the instant appeal, he asserts that the nearly $4.5 million-restitution order, although an appropriate condition of his conviction for defrauding credit unions, was not in any way attributable to his perjurious conduct. Therefore, he avers, the court lacked authority to condition defendant's sentence upon his execution of the 2000 consent order, which merely provided for the payment of said restitution. We are not persuaded.

The plain language of § 12–19–32, provides in pertinent part: "[i]n addition to or in lieu of any non-mandatory sanction imposed as part of a sentence or as a condition of probation, a judge at the time of sentencing may order restitution which may be in the form of monetary payment or some type of community restitution." We perceive no limitation on the scope of a sentencing court's authority to order restitution prescribed by the VBOR, the express purpose of which is to ensure that all victims of crime are treated with respect and receive financial compensation for their losses. Section 12–28–2. Nor do we need, within the context of this appeal, to explore the parameters of a sentencing court's ability to order restitution. Although the economic loss at issue here may not have been directly caused by defendant's perjurious conduct, the link between them is undeniable. The defendant's perjury was an affront to the very proceedings designed to facilitate payment of the restitution order. By misrepresent-

ing his financial condition and testifying falsely at a hearing seeking to establish his ability to pay, defendant clearly was attempting to thwart the court's efforts to enforce the original restitution order entered into by consent of the parties. It is our opinion that § 12–19–32 provided ample authority for the hearing justice to condition defendant's perjury sentence upon the 2000 consent order. Moreover, defendant explicitly agreed to the consent order which established a schedule for the payment of his pre-existing restitution obligation. Under the circumstances of this case, we discern no grounds for relieving defendant from the conditions for which he bargained and by which he benefited.

The cases defendant cited do not undermine this conclusion. The outcomes in the cases he cites from other jurisdictions turn on the wording of the restitution statutes enacted in those jurisdictions, and thus provide little guidance to this Court. *See Hughey v. United States,* 495 U.S. 411, 415, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (interpreting the Federal Victim and Witness Protection Act, 18 U.S.C. §§ 3579, 3580); *United States v. Cutter,* 313 F.3d 1, 7 (1st Cir.2002) (construing federal Mandatory Victim Restitution Act, 18 U.S.C. § 3663A); *State v. Lane,* 649 A.2d 1112, 1115 (Me.1994) (proximate causal relationship required by language of the statute at issue); *State v. Eno,* 143 N.H. 465, 727 A.2d 981, 984–85 (1999) (predicating scope of restitution on statutory definitions).

We also note that the defendant received an extremely favorable sentence in exchange for his consent to enter into the 2000 consent order. Although a perjury conviction is punishable by up to twenty years in prison, G.L.1956 § 11–33–2, the defendant received only a ten-year suspended sentence, plus the state's assurance that it would not interfere in the defendant's forthcoming parole hearing.

The defendant does not argue that this agreement was in any way involuntary, nor does he argue that counsel did not adequately represent him at his sentencing hearing. As the hearing justice remarked from the bench:

"The defendant got a pretty good deal back in 2000 * * * [and] was not sentenced to additional jail time. * * *

"[N]ow * * * what the defendant wants to do is to simply avoid those consequences. I don't see it one bit. My sense is the defendant still hasn't learned his lesson. The man who was convicted in 199[3] of what appears to be some kind of fraudulent conduct continues to come before this Court with the hope or expectation that maybe he can avoid the agreement that he signed."

We agree with the hearing justice's observations. Having struck a bargain and benefited from it by receiving a more lenient sentence, the defendant is prohibited now from disavowing the order to which he voluntarily agreed. *See State v. D'Amario, III,* 725 A.2d 276, 281 (R.I.1999); *State v. Karan,* 525 A.2d 933, 934 (R.I.1987).

## Conclusion

For the reasons stated in this opinion, we affirm the order denying the defendant's motion to correct an illegal sentence. The papers shall be remanded to the Superior Court.