DECISION
Plaintiff Alfred R. Ferretti, Jr. ("Ferretti") brings this Petition for Stay of Suspension Without Pay pursuant to G.L. 1956 § 42-28.6-13(d). Defendant Town of Coventry ("Town") objects to this petition.
 I Facts and Travel
On June 9, 2010, the Rhode Island State Police arrested Ferretti, a Coventry Police Officer, and charged him with indecent exposure/disorderly conduct, a misdemeanor, pursuant to G.L. § 11-45-2.[1] The Rhode Island State Police charged Ferretti based on the allegation that Ferretti traveled to the apartment of two females whom he had encountered while on traffic detail and engaged in a sexual act there. As a result of these charges, the Town suspended Ferretti with pay and benefits on June 10, 2010 pursuant to § 42-28.6-13(d). Subsequently, on November 1, 2010, a District Court judge found Ferretti guilty of indecent exposure/disorderly *Page 2 
conduct. The judge sentenced him to six months probation and ordered him to attend professional counseling. That day, Ferretti appealed his conviction to the Superior Court, pursuant to G.L. 1956 § 12-22-1.
On December 11, 2010, the 180th day of his suspension, the Town converted his suspension with pay to a suspension without pay. The Town asserts that it converted Ferretti's suspension to that without pay because pursuant to § 42-28.6-13(d), after 180 days of suspension without a disposition in a misdemeanor criminal case, a town may convert a suspension of an officer to that without pay and benefits. In the petition before the Court, Ferretti requests that the Court stay this suspension without pay.
In support of his petition, Ferretti argues that this delay was "outside [his] control." Therefore, he maintains, under the statute, this Court may grant him a stay. At the December 16, 2010 hearing before this Court on the matter, Ferretti argued that this delay was outside of his control because there was difficulty in obtaining records of the complaining witness. In his reply memorandum to the Town's objection, however, he states that it is undisputed that the delay is due to his appeal to Superior Court. Ferretti contends that pursuant to statutory interpretation, the Court must avoid rendering the statute absurd, which would result from including appeals to Superior Court as a delay within an officer's control. Finally, Ferretti asserts that the General Assembly could not have intended to suspend officers without pay when they are appealing to the Superior Court because that conclusion interferes with his constitutional right to a trial by jury.
In response, the Town emphasizes the disposition of the case would have occurred within 180 days had Ferretti not appealed the District Court conviction, despite any problems obtaining records. Furthermore, the Town maintains that if the statute is construed to include appeals as a *Page 3 
delay that is "outside the law enforcement officer's control," the statute would be rendered meaningless because no statute mandates that a decision must be appealed to the Supreme Court in 180 days and no decision can be appealed from the District Court to a decision in the Supreme Court within 180 days. The Town contends that this statute, while protecting police officers, requires a time limit on the financial support that a town can provide to a suspended officer. Furthermore, the Town notes that although an appeal is a constitutional right, inherent risks and varying time lengths occur in a de novo trial in Superior Court.
 II Analysis A Section 42-28.6-13(d)
Section 42-28.6-13(d) is a portion of the Law Enforcement Officer's Bill of Rights ("LEOBR"), which was designed to protect police officers from infringement of their rights during investigations of alleged improper conduct. In re Denisewich,643 A.2d 1194, 1196 (R.I. 1994) (citing Coalition of BlackLeadership v. Cianci, 570 F.2d 12, 14 (1st Cir. 1978)). This statute serves as the "exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to disciplinary action." Id. (citing Cityof East Providence v. McLaughlin,593 A.2d 1345, 1348 (R.I. 1991)). The section at issue provides in pertinent part:
 "Suspension may be imposed by the chief or highest ranking sworn officer of the law enforcement agency when the law enforcement officer in [sic] under investigation for a misdemeanor criminal matter. Any such suspension shall consist of the law enforcement officer being relieved of duty, and he or she shall receive all ordinary pay and benefits as he or she would receive if he or she were not suspended. . . . If the disposition of the criminal matter does not take place within one hundred eighty (180) days of the commencement of such suspension, the law enforcement officer may be suspended without pay and benefits. . . . The law enforcement officer may petition the *Page 4 presiding justice of the superior court for a stay of the suspension without pay, and such stay shall be granted upon a showing that said delay in the criminal disposition was outside the law enforcement officer's control. In the event the law enforcement officer is acquitted of any misdemeanor related thereto, the officer shall be forthwith reinstated and reimbursed all salary and benefits that have not been paid during the suspension period." Sec. 42-28.6-13(d) (emphasis added).
In the present case, it is undisputed that a disposition has yet to occur as a direct result of Ferretti's choice to appeal to Superior Court. Even if Ferretti maintained in his argument that the delay was a direct result of his inability to gain documents from a complaining witness, the appeal nevertheless would remain the primary cause of the lack of disposition because the District Court decision was entered in fewer than 180 days from his suspension, on November 1, 2010. Thus, this Court must determine whether, under § 42-28.6-13(d), an appeal to Superior Court is considered a "delay under the law enforcement officer's control."
When the language of a statute is clear and unambiguous, the Court will give the language its plain and ordinary meaning. In reHarrison, 992 A.2d 990, 994 (R.I. 2010) (quoting State v.LaRoche, 925 A.2d 885, 887 (R.I. 2007)). "It is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision." Id. (quoting LaRoche,925 A.2d at 888). Thus, the Court will look to the entire statute and not an isolated provision when the language of a statute can be given more than one interpretation. Ryan v. City of Providence, No. 2009-311-A., slip. op. at 11 (R.I., filed Jan. 6, 2010) (citations omitted); see also In re Brown,903 A.2d 147, 149 (R.I. 2006) (citations omitted) ("It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation."). *Page 5 
 B Appeal to Superior Court as a "delay outside the law enforcement officer's control"
Section 42-28.6-13(d) does not define "delay under the law enforcement officer's control," nor does it give examples of delays that fall under this provision. In comparison to other jurisdictions' LEOBRs, Rhode Island's section concerning suspension pending the outcome of an investigation is unique and the most intricate; consequently, comparisons to other jurisdictions' LEOBR are not helpful. Kevin M. Keenan Samuel Walker, An Impediment to Police Accountability? AnAnalysis of Statutory Law Enforcement Officers' Bills of Rights, 14 B.U. Pub. Int. L.J. 185, 233-34 (2005).
Nevertheless, courts have evaluated actions that fall within a party's control under other circumstances. In the context of a failure to meet a bankruptcy court-ordered filing deadline, the United States Supreme Court explained:
 "At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention. At the other, a party simply may choose to flout a deadline. In between lie cases where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as where a party misses a deadline through inadvertence, miscalculation, or negligence." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 387-88 (1993).
The circumstances in this case lie "in between," as the Court described, because Ferretti chose to "miss the deadline for a good reason," to appeal his conviction. See id. The instant fact pattern, however, diverges from that of Pioneer Investment Services because the standard in failing to comply with a bankruptcy filing is "excusable neglect," which is not a relevant standard in this case. Seeid. at 388. Similarly, courts have discussed responsibility for delays in the context of *Page 6 
the right to a speedy trial. See Barker v. Wingo,407 U.S. 514, 531 (1972) (establishing that when evaluating speedy trial claims, courts must consider the "reason the government assigns to justify the delay"). For example, in the context of a right to a speedy trial dispute, matters outside the control of a party included "the September 11th tragedy and the court's scheduling difficulties due to illness." United States v. Dunn,345 F.3d 1285, 1296 (11th Cir. 2003). Although these comparable circumstances illustrate that an occurrence is outside a party's control when it is an "act of God," national emergency, or in no way may be attributed to a choice made by a party, none of these circumstances specifically addresses whether the right to appeal is technically considered within a party's control.
As a result of this unique and unclear provision, this Court must construe § 42-28.6-13(d) within the context of the entire LEOBR "to glean the intent of the legislature when it enacted this ambiguous provision." See In re Harrison, 992 A.2d at 996. Accordingly, the Court will examine other relevant sections of this statute to ensure that it does not "construe [this] statute so as to render it absurd or unreasonable." Zincone v. Mancuso, 523 A.2d 1222, 1225 (R.I. 1987) (citing Trembley v. City of Central Falls,480 A.2d 1359 (R.I. 1984)). Section 42-28.6-13(h) provides in pertinent part that "[a]ny law enforcement officer who is convicted of a felony shall, pending the prosecution of an appeal, be suspended without pay and benefits." Through this section, the General Assembly demonstrated its ability to use specific terms when necessary by distinguishing "the prosecution of an appeal" and "conviction" from the general term "disposition" in § 42-28.6-13(d). Thus, this Court gleans that the General Assembly employed § 42-28.6-13(h) to ensure that a law enforcement officer convicted of a felony loses his pay, despite any appeal and whether or not the disposition occurs within 180 days, as a type of punishment. In contrast, under 42-28.6-13(d), the General Assembly drew a line as to when a *Page 7 
town could no longer be obligated to pay an officer during ongoing criminal proceedings, not as a punishment but as a practical cutoff. Thus, the comparison between the language in 42-28.6-13(d) and 42-28.6-13(h) demonstrates the General Assembly's intent to include appeals to Superior Court within a broad range of possible reasons for converting the suspension to one without pay because it does not specifically exclude it.
Ferretti, however, argues that if the Court finds that the statute allows the Town to suspend him without pay due to his appeal, the interpretation of this section would lead to an absurd result. He specifically contends that under that interpretation, the penalty would be worse as a result of his choice to appeal compared to the penalty if he chose not to appeal. He attributes this result to § 42-28.6-13(g). That section states in pertinent part: "[a]ny law enforcement officer who is charged, indicted or informed against for a felony or who is convicted of and incarcerated for a misdemeanor may be suspended without pay and benefits at the discretion of the agency or chief or highest ranking sworn officers." Sec. 42-28.6-13(g). Thus, Ferretti argues that because the District Court justice did not sentence him to any incarceration, the Town would not have been able to suspend him without pay had he not appealed.
Under the LEOBR, an officer who is subject to an investigation as a result of a noncriminal matter has the right to a hearing during which the hearing committee may "sustain, modify in whole or in part, or reverse the complaint or charges against a law enforcement officer."In re Denisewich, 643 A.2d at 1197 (quoting Sec. 42-28.6-11(a)). When the potential disciplinary action is a result of criminal charges, the hearing "shall be suspended pending the adjudication of said criminal charges." Sec. 42-28.6-4. Accordingly, the General Assembly could not have intended for a police officer who was convicted of a misdemeanor but served no *Page 8 
jail time to be automatically reinstated and paid under every circumstance. Instead, this suspension procedure exists in § 42-28.6-13 to mandate the type of pay that an officer may receive during ongoing criminal proceedings while the hearing is suspended. If Ferretti had chosen not to appeal his District Court conviction, the Town may not have simply reinstated him with pay. In contrast, the Town presumably would have held a hearing regarding disciplinary action pursuant to § 42-28.6-4. Therefore, interpreting the section to include appeals as within the officer's control does not lead to an absurd result.
Within § 42-28.6-13(d), the General Assembly could have specified that an appeal is not "within the law enforcement officer's control"; however, it chose not to specify any exceptions besides "control."See Sutherland Stat. Const. § 47.25 (4th ed.) (explaining that statutes should be interpreted to express "the concept that when people say one thing they do not mean something else"). Thus, this case is distinguishable from Ryan because in that case, the Honest Service Ordinance of the Providence Code of Ordinances included an "explicit list of activities that constitute a crime related to one's employment." Ryan, slip op. at 12. Thus, under that statute, "[i]f the city intended for honorable service to be interpreted more expansively than [the listed activities], it would not have failed to define it as such, nor would it have articulated such a limited and very specific list." Id. The LEOBR, however, does not define "control" nor does it articulate any list to define the term.
Moreover, appeals to the Superior Court, the Supreme Court, and their ultimate consideration and decision far exceed 180 days in length. Thus, it is reasonable to infer that the General Assembly intended to use the 180 days as a practical cutoff for salary and benefits, despite any appeals, because requiring a town to pay a suspended officer during the lengthy time period required for appeals leads to an absurd result.See, e.g., Mumma v. Cumberland Farms, *Page 9 Inc., 965 A.2d 437, 442 (R.I. 2009) (recognizing the validity of the legislature's explicit limit of "workers' compensation benefits for partial incapacity to 312 weeks" pursuant to G.L. 1956 § 28-33-18 and § 22-33-18.3). Accordingly, viewing as a whole the statute which does not specify circumstances within a law enforcement officer's control, a delay resulting from an appeal to Superior Court is not a "delay outside the law enforcement officer's control."
Although this cutoff line may seem arbitrary, the General Assembly, not the judiciary, has the discretion to set a limit on statutory privileges. See Village of Belle Terre v. Boraas,416 U.S. 1, 8 (1974). Within this discretion, it is inevitable that "every line drawn by a legislature leaves some out that might well have been included." Id.; see also Schweiker v. Wilson,450 U.S. 221, 239 (1981) ("Awarding . . . benefits inevitably involves the kind of line-drawing that will leave some . . . person outside the favored circle"). Moreover, every statute enacted by the General Assembly is presumed constitutional, unless the challenging party provides evidence beyond a reasonable doubt that it is unconstitutional.Parella v. Montalbano, 899 A.2d 1226, 1232-33 (R.I. 2006) (citingState v. Russell, 890 A.2d 453, 458 (R.I. 2006)). Besides the following "right to trial by jury" argument, Ferretti has not presented evidence of the unconstitutionality of the 180 day cut-off. Therefore, despite this seemingly arbitrary cutoff, it is not for this Court to conjecture as to an appropriate length of time for the suspension of pay and benefits and what should not be left out.[2] Instead, this Court is confined by the General Assembly's exercise of its discretion in creating that line. *Page 10 
 C Section 42-28.6-13(d) and the Right to Trial by Jury
Ferretti further argues that finding an appeal to Superior Court as causing a delay that is within the officer's control deprives him of his constitutional right to a jury. Under article 1, section 15 of the Rhode Island Constitution, "`[t]he right of trial by jury shall remain inviolate' in this state." FUD's, Inc. v. State,727 A.2d 692, 695 (R.I. 1999) (quoting R.I. Const. Art. 1, § 15). Title 12, chapter 22, section 1 of Rhode Island General Laws specifically grants any person the right to appeal a judgment of District Court to Superior Court. Under this statute, an appellant receives a de novo trial in Superior Court, during which the Superior Court "possesses the power to impose a sentence . . . more severe than that imposed by the District Court." State v. Avila,415 A.2d 180, 182-83 (R.I. 1980); see State v. McManus,950 A.2d 1180, 1181 (R.I. 2008) (per curiam) (citation omitted). Thus, although the right to appeal to the Superior Court exists, it is not without risks.
Section 42-28.6-13 grants police officers added job protection during investigations regarding criminal activity. Therefore, the LEOBR, specifically the 180 day suspension with pay, is not a constitutional right; rather, it is a statutory privilege. See, e.g.,State v. King, 996 A.2d 613, 621 (R.I. 2010) (finding that Sup. Ct. Crim. P. 5(a) is "not a constitutional command to be found within the text of our Federal or State Constitutions" (quotingState v. Nardolillo, 698 A.2d 195, 199 (R.I. 1997)));State v. DeOliveira, 972 A.2d 653, 661 (R.I. 2009) (citing Inre *Page 11 Kean, 520 A.2d 1271, 1274 (R.I. 1987)) (recognizing that "the right to refuse to take a Breathalyzer test is a statutory, not a constitutional, right"). Accordingly, providing officers with job protection while they are awaiting the disposition of a criminal matter is "an act of grace created by state legislation"; a town that follows the statute by converting suspensions to those without pay, is not interfering with any right to a jury. See Barber v. Vose,682 A.2d 908, 912 (R.I. 1996) (finding that "good time credit for good behavior while incarcerated is not a constitutional guarantee, but is instead an act of grace created by state legislation").
Therefore, Ferretti's loss of his pay due to the lack of disposition after 180 days does not interfere with his constitutional right to a trial by jury; instead, he is merely losing an added statutory protection that is not guaranteed under the Constitution. This Court, however, acknowledges that this statute's unclear and seemingly arbitrary cutoff for pay, although not a violation of a constitutional right, is at first blush an unfair burden on officers who choose to appeal. Nevertheless, the Court is constrained to find through the present statutory language as written that the General Assembly intended to end financial support for an officer during the taking of an appeal.
For the above reasons, the Court concludes that the Town can convert Ferretti's suspension to that without pay because his choice to appeal to the Superior Court was within his control, as well as a proper exercise of his constitutional right, though its time period exceeded duration of 180 days. The Court further observes that if Ferretti is acquitted, he must then be reimbursed all salary and benefits from this period, beginning December 11, 2010 pursuant to § 42-28.6-13(d). *Page 12 
 III Conclusion
After due consideration of the arguments advanced by the parties and the Officer's Bill of Rights as a whole, this Court denies Ferretti's petition for stay of suspension without pay because the appeal technically constituted a delay within Ferretti's control. Counsel shall submit appropriate judgment for entry consistent with this decision.
[1] That statute provides the following:
 "A person commits indecent exposure/disorderly conduct when for purposes of sexual arousal, gratification or stimulation, such person intentionally, knowingly, or recklessly: Exposes his or her genitals to the view of another under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to that person." Sec. 11-45-2.
[2] Justice Holmes opined:
 "When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark." Louisville Gas Elec. Co. v. Coleman, 277 U.S. 32, 41 (1928) (Holmes, J. dissent).