**Supreme Court**

No. 2014-88
(13-92 S)

Mark Mancini                    :

        v.                      :

City of Providence et al.       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Mark Mancini                    :

v.                    :

City of Providence et al.                    :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  This case comes before us pursuant to a September 26, 2013 order of the United States District Court for the District of Rhode Island certifying a question to this Court in accordance with Article I, Rule 6(a) of the Supreme Court Rules of Appellate Procedure.[1]  The certified question reads as follows:

---

[1]     Article I, Rule 6(a) of the Supreme Court Rules of Appellate Procedure provides in pertinent part as follows:

> "This Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this Court."

The authorization which is accorded by the above-quoted rule is discretionary.  See In re Tetreault, 11 A.3d 635, 639 (R.I. 2011) (citing Jefferson v. Moran, 479 A.2d 734, 738 (R.I. 1984)).  On April 16, 2014, we issued an order reflecting our decision to exercise that discretion in the instant case and to accept the certified question for determination.

- 1 -

> "Does Section 28-5-7(6) of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 et seq. ('FEPA'), provide for the individual liability of an employee of a defendant employer and, if so, under what circumstances?"

For the reasons set forth in this opinion, we answer the certified question in the negative—G.L. 1956 § 28-5-7(6) does not provide for the individual liability of an employee of a defendant employer.

## I

## Facts and Travel

It is not necessary for us to delve too deeply into the factual background of this case due to the fact that we are called upon to answer only a narrow question of law. It suffices to say that there is an action pending in federal court in which plaintiff, Sergeant Mark Mancini, alleges that he was illegally denied a promotion to the position of Lieutenant in the Providence Police Department. According to the Certification Order, the eleven-count complaint involves claims of employment and disability discrimination against the City of Providence and Hugh Clements, Jr., the Chief of Police of the Providence Police Department. At issue in the instant proceeding is plaintiff's count claiming that Chief Clements is liable, in his individual capacity, for the City's failure to have promoted plaintiff in alleged violation of FEPA § 28-5-7(6). In the federal action, Chief Clements moved to dismiss the count alleging that he had violated § 28-5-7(6) on the basis that, in his view, that statutory section does not provide for individual liability. The District Court subsequently certified to this Court the question with which we are presently grappling. Our role in this case is limited to answering the legal question certified to us.

## II

## Standard of Review

Our jurisprudence is clear that "certified questions are questions of law and are reviewed de novo by this Court." In re Tetreault, 11 A.3d 635, 639 (R.I. 2011); see also Western Reserve Life Assurance Co. of Ohio v. ADM Associates, LLC, 116 A.3d 794, 798 (R.I. 2015). Moreover, as we have often stated, this Court adheres to the de novo standard when reviewing issues of statutory construction. DeMarco v. Travelers Insurance Co., 26 A.3d 585, 616 (R.I. 2011); see also State v. LaRoche, 925 A.2d 885, 887 (R.I. 2007).

## III

## Analysis

## A

## Individual Liability

In the instant case, we are called on to determine whether or not § 28-5-7(6) provides for individual liability. That statutory section provides as follows:

> "It shall be an unlawful employment practice * * * [f]or any person, whether or not an employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of this chapter or any order issued pursuant to this chapter, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice[.]"

Sergeant Mancini argues before this Court that what he considers to be the plain and unambiguous language of § 28-5-7(6) provides for individual liability. He points out to the Court that Connecticut, Massachusetts, and New York have anti-discrimination statutes with aiding and abetting language and that some courts applying that language have, in his words,

- 3 -

"consistently held that individual employees of the employer may be held liable for unlawful employment practices;" he urges the Court to follow the cited judicial interpretations of Connecticut, Massachusetts, and New York law. See Ping Zhao v. Bay Path College, 982 F. Supp. 2d 104 (D. Mass. 2013); Maher v. Alliance Mortgage Banking Corp., 650 F. Supp. 2d 249 (E.D.N.Y. 2009); Farrar v. Town of Stratford, 537 F. Supp. 2d 332 (D. Conn. 2008); Bogdahn v. Hamilton Standard Space Systems International Inc., 741 A.2d 1003 (Conn. Super. Ct. 1999); Lopez v. Commonwealth, 978 N.E.2d 67 (Mass. 2012). He further directs this Court's attention to the fact that FEPA calls for a broad and liberal construction in order to effectuate its purpose of "safeguard[ing]" the rights of employees "to obtain and hold employment without * * * discrimination." Section 28-5-3.

Disagreeing with the statutory analysis proposed by Sergeant Mancini, Chief Clements contends that § 28-5-7(6) is ambiguous when taken in the context of the FEPA statute as a whole; and he encourages this Court to follow the reasoning of the Supreme Courts of Alaska, California, and Minnesota and hold that § 28-5-7(6) does not provide for individual liability. See Mills v. Hankla, 297 P.3d 158 (Alaska 2013); Reno v. Baird, 957 P.2d 1333 (Cal. 1998); Rasmussen v. Two Harbors Fish Co., 832 N.W.2d 790 (Minn. 2013).[2]

We enter upon this important exercise in legal analysis by recalling the venerable principle of statutory construction that, in construing a statute, "our ultimate goal is to give effect to the General Assembly's intent." DeMarco, 26 A.3d at 616 (internal quotation marks omitted). In furtherance of that goal, "when the language of a statute is clear and unambiguous, [this

---

[2]    We note and appreciate the additional legal submissions, in the form of amicus curiae briefs, which this Court has received from the Attorney General of the State of Rhode Island and the Rhode Island Commission for Human Rights. In addition, we acknowledge and express our appreciation for the joint amicus curiae brief filed by the Rhode Island Association for Justice and the American Civil Liberties Union of Rhode Island.

Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." LaRoche, 925 A.2d at 887 (internal quotation marks omitted); see also DeMarco, 26 A.3d at 616. However, "[t]he plain meaning approach * * * is not the equivalent of myopic literalism, and it is entirely proper for us to look to the sense and meaning fairly deducible from the context." National Refrigeration, Inc. v. Capital Properties, Inc., 88 A.3d 1150, 1156 (R.I. 2014) (internal quotation marks omitted); see Raiche v. Scott, 101 A.3d 1244, 1248 (R.I. 2014); see also Reed Dickerson, The Interpretation and Application of Statutes 111 n.24 (1975) ("[A] word in isolation (i.e., without context) begins with a very wide area of meaning, for it may occur in many hundreds of situations and may be used as a label for scores of objects; but by means of the practical and linguistic contexts in which it is used we can whittle it down to precisely that subarea of meaning which it must have in any specific utterance.") (internal quotation marks omitted). When confronted with an ambiguous statute, we must look to the entire statutory scheme to deduce the legislative intent; our interpretive gaze should not be restricted to a mere "isolated provision," In re Harrison, 992 A.2d 990, 994 (R.I. 2010) (internal quotation marks omitted); and "under no circumstances will [we] construe a statute to reach an absurd result." National Refrigeration, Inc., 88 A.3d at 1156 (internal quotation marks omitted).

In our opinion, it is evident upon reading § 28-5-7(6) that that statutory section is ambiguous with respect to whether or not it imposes individual liability. The fact that courts within Rhode Island have come to opposite conclusions with respect to whether or not to impose individual liability under § 28-5-7(6)[3] and the fact that courts around the country have come to

---

[3]    Although the question of whether G.L. 1956 § 28-5-7(6) provides for individual liability is a question of first impression for this Court, we are aware that it has been addressed by both the Rhode Island Superior Court and the United States District Court for the District of Rhode Island. In Evans v. Rhode Island Department of Business Regulation, No. 01-1122, 2004 WL 2075132 at *3 (R.I. Super. Ct. Aug. 21, 2004), a justice of the Superior Court held that an

opposing conclusions when interpreting state statutes with identical or similar language to that of § 28-5-7(6)[4] bolsters our confidence in our conclusion that the statutory language at issue is indeed ambiguous.

As such, while the statute before us does make reference to liability of "any person, whether or not an * * * employee," that language should not be viewed in isolation. See In re Harrison, 992 A.2d at 994. The rest of the statutory section imposes liability for aiding and abetting employment discrimination, preventing compliance with FEPA, and/or attempting to commit an unlawful employment practice. In the instant case, the alleged unlawful employment practice involved a decision of Chief Clements which negatively affected Sergeant Mancini's ultimate chances for promotion. It was solely the act of Chief Clements which was the alleged unfair employment practice at issue in the instant case. Accordingly, for § 28-5-7(6) to constitute a rational basis for the imposition of individual liability on the Chief, the finder of fact

individual could be personally liable for "conduct amounting to FEPA violations." Conversely, seven years later, in Bringhurst v. Cardi's Department Store, Inc., No. 10-1025, 2011 WL 9379273 at *3 (R.I. Super. Ct. Dec. 30, 2011), another justice of the Superior Court chose not to vary from a previous ruling by another justice in the still-pending case which had dismissed charges brought under FEPA against an individual defendant.

In 1996 and 1998, the United States District Court for the District of Rhode Island held that FEPA did impose individual liability. Wyss v. General Dynamics Corp., 24 F. Supp. 2d 202, 210 (D.R.I. 1998); Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 573 (D.R.I. 1996). However, in 2009, the court held that, due to a shift in the federal law, it would not interpret FEPA to allow for individual liability. Johnston v. Urban League of Rhode Island, Inc., No. 09-167S, 2009 WL 3834129 at * 2 (D.R.I. Nov. 13, 2009) (mem.).

[4] See Ping Zhao v. Bay Path College, 982 F. Supp. 2d 104 (D. Mass. 2013); Maher v. Alliance Mortgage Banking Corp., 650 F. Supp. 2d 249 (E.D.N.Y. 2009); Farrar v. Town of Stratford, 537 F. Supp. 2d 332 (D. Conn. 2008); Bogdahn v. Hamilton Standard Space Systems International Inc., 741 A.2d 1003 (Conn. Super. Ct. 1999); Lopez v. Commonwealth, 978 N.E.2d 67 (Mass. 2012); but see Mills v. Hankla, 297 P.3d 158 (Alaska 2013); Reno v. Baird, 957 P.2d 1333 (Cal. 1998); Rasmussen v. Two Harbors Fish Co., 832 N.W.2d 790 (Minn. 2013).

Sergeant Mancini contends that this Court should follow the Ping Zhao, Maher, and Bogdahn line of cases imposing individual liability. However, after exhaustive review of the cases and much reflection, we do not find their reasoning persuasive.

would necessarily have to determine that he aided and abetted himself.  In our judgment, such an interpretation would contort the statutory language to an extent that would not be linguistically or jurisprudentially acceptable.  We recognize that at least one trial court has interpreted a similarly worded statute[5] as allowing for a finding of liability on the basis of the employee at issue having aided and abetted himself.  See Maher, 650 F. Supp. 2d at 261.  However, we are simply unable to conclude, after carefully scrutinizing the statutory language at issue, that such an interpretation is reasonable or reflective of what we perceive to have been the legislative intent.  To apply the language of § 28-5-7(6) against an employee who was the sole perpetrator with respect to the alleged unlawful employment practice "would create a strange and confusing circularity where the person who has directly perpetrated the harassment only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator."  Rasmussen, 832 N.W.2d at 801 (internal quotation marks omitted).  We decline to construe a statute to reach a result that we consider to be incompatible with logic and conventional English usage.  See Ryan v. City of Providence, 11 A.3d 68, 76 (R.I. 2011) ("Such an illogical interpretation is not permitted by our rules of statutory construction."); see also National Refrigeration, Inc., 88 A.3d at 1156.[6]

---

[5]     Under N.Y. Exec. Law § 296(6) (McKinney 2016), it is an "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

[6]     We note, additionally, that several trial courts have interpreted language similar to that of § 28-5-7(6) to allow for individual liability but only as a derivative claim—the defendant must have "committed a wholly individual and distinct wrong * * * separate and distinct from the claim in main * * *."  Ping Zhao, 982 F. Supp. 2d at 115 (internal quotation marks omitted); see Bolick v. Alea Group Holdings, Ltd., 278 F. Supp. 2d 278, 282 (D. Conn. 2003); see also Fisher v. Town of Orange, 885 F. Supp. 2d 468, 476-77 (D. Mass. 2012).  It is our decided opinion that such an interpretation is untenable.  If the General Assembly had intended such a result, it is our view that it would not have used such ambiguous language to achieve that end.

We recognize that the General Assembly has expressed its desire that FEPA be "construed liberally." Section 28-5-38(a). But such a call for a liberal construction should not be understood as an authorization for the courts to "fl[y] in the face of the structure of the statute;" we decline to construe a statute to reach an incongruous end as a result of a misguided view that a liberal construction mandate calls for the wholesale abandonment of other venerable principles of statutory construction. U.S. Equal Employment Opportunity Commission v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995); see State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) ("[T]his Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute.") (internal quotation marks omitted); Simeone v. Charron, 762 A.2d 442, 448 (R.I. 2000); see also Bandoni v. State, 715 A.2d 580, 596 (R.I. 1998) ("[T]he function of adjusting remedies to rights is a legislative responsibility rather than a judicial task * * *.").

It is our view that, if the General Assembly intended to authorize the imposition of individual liability, it would have done so by using language far clearer than that employed in § 28-5-7(6). See Rasmussen, 832 N.W.2d at 801 ("If the Legislature had intended to create liability for any individual employee who engaged in an unfair employment practice in the employment setting, it could have done so without resorting to a theory of aiding and abetting liability."); see generally Franconia Associates v. United States, 536 U.S. 129, 141 (2002) ("A waiver of the sovereign immunity of the United States cannot be implied but must be unequivocally expressed.") (emphasis added) (internal quotation marks omitted); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 243 (1985) (stating that "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself")

(emphasis added).[7]  We fully concur with the eloquently expressed reasoning of the Supreme

Court of Alaska in reaching a conclusion about the import of statutory language very similar to

that of § 28-5-7(6):[8]

> "We do not believe the legislature intended to use the aiding and
> abetting provision to hold employees directly liable for their
> discrimination. Given the otherwise clear terms of the statute, we
> will not assume that on the critically important issue of individual
> liability the legislature decided not to use similarly clear language.
> We decline to hold that the legislature 'intended to accomplish a
> result so significant by a method so abstruse.'"  Mills, 297 P.3d at
> 172 (emphasis added) (quoting Reno, 957 P.2d at 1342).

At the end of the day, after closely analyzing the language of § 28-5-7(6), it is our unequivocal

conclusion that said statute does not authorize the imposition of individual liability.

Our conclusion is buttressed by the fact that § 28-5-6(8)(i), as amended by P.L. 2013, ch.

413, § 1, defines "[e]mployer" to include "any person in this state employing four (4) or more

individuals[;]" in our view, it would not be logical to conclude, without far more textual

evidence, that the General Assembly intended to exempt employers with less than four

employees from potential liability but simultaneously intended to authorize the imposition of

liability on individuals under the ambiguous language of § 28-5-7(6).

We base our response to the certified question squarely on traditional principles of

statutory construction.  However, we note that allowing for the possibility of individual liability

would have a predictably chilling effect on the discretionary management decisions of

---

[7]     We are aware that the United States Supreme Court's decision in Atascadero State Hospital v. Scanlon, 473 U.S. 234, 243 (1985), was superseded by statute, as recognized in Lane v. Pena, 518 U.S. 187, 198 (1996).  However, it goes without saying that that fact does not alter the viability of the hermeneutic approach to statutory interpretation employed by the Supreme Court in Atascadero State Hospital, which we emulate in this opinion.

[8]     Alaska Stat. Ann. § 18.80.260 (West 2016) reads as follows: "It is unlawful for a person to aid, abet, incite, compel, or coerce the doing of an act forbidden under this chapter or to attempt to do so."

supervisory employees—since such a regime would, in all likelihood, result in supervisors frequently tending to make employment decisions based on their apprehensiveness as to the possibility of suit rather than on what they deem to be in the best interest of the employer. It is our view that, as a matter of public policy, a supervisor should not have to be concerned about keeping his or her house or car, or having enough wherewithal to pay for the education of his or her children when deciding, for example, between two employees who are candidates for a promotion. That is especially true because, if the supervisor makes such a decision for unlawful reasons, the individual aggrieved has recourse against the employer under FEPA and therefore has a means to remedy the harm done. We further note that imposing individual liability would create a substantial question, in the case of a collective decision, as to which individual might be liable. Also, the remedies provided by FEPA include the issuance of a cease-and-desist order, hiring, reinstatement, upgrading of employees with or without back pay, and admission or restoration to union membership. Section 28-5-24. It is clear to us that those statutory remedies more clearly relate to the employer as such rather than to an individual. See Rhode Island Board of Governors for Higher Education v. Newman, 688 A.2d 1300, 1302 (R.I. 1997) (stating that, in conducting statutory analysis, a court should "first examine the statute in its entirety and then the individual provisions in the context of the whole, not as if each provision were independent of the whole").

The Supreme Court of California took into account many of the just-referenced concerns in holding that the California Fair Employment and Housing Act did not provide for individual liability. Reno, 957 P.2d at 1347. After carefully parsing that court's reasoning, we find its opinion especially convincing. The court in Reno noted that "[m]any of the federal cases which found no personal liability against individual supervisory employees based their decisions in part

on the incongruity that would exist if small employers were exempt from liability while individual nonemployer supervisors were at risk of personal liability." Id. at 1339 (quoting Janken v. GM Hughes Electronics, 53 Cal. Rptr. 2d 741, 751 (Cal. Ct. App. 1996)). The Supreme Court of California likewise found it "incongruous" to think that the legislature in California would protect employers with fewer than five employees from the burden of litigating discrimination claims but simultaneously intended to impose the possibility of liability on individual persons who are not employers at all. Id. at 1340. In discussing further factors weighing in favor of its conclusion that the California statute in question did not impose individual liability, the Reno court made the following observations that strike us as being especially perceptive and telling:

> "[T]o submit all officials, the innocent as well as the guilty, to the burden of trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties * * *.
>
> " * * * [I]t is manifest that if every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected.
>
> " * * * [S]upervisory employee[s] [would be coerced into] not [making] the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended. The employee would thus be placed in the position of choosing between loyalty to the employer's lawful interests at severe risk to his or her own interests and family, versus abandoning the employer's lawful interest and protecting his or her own personal interests." Id. at 1340, 1341 (internal quotation marks omitted).

Finally, in addressing aiding and abetting language similar to that contained in § 28-5-7(6),[9] the California Supreme Court found it linguistically questionable whether an employee who exercises personnel management authority is aiding and abetting his or her employer: "[T]he stilted and unusual nature of such a usage alone casts doubt on [a construction imposing individual liability]." Reno, 957 P.2d at 1343. The California Supreme Court held that, if the legislature intended to provide for individual liability, it "would have done so by language more direct and less susceptible to doubt." Id. We are fully in accord with, and find applicable to our situation, the jurisprudentially sound conclusion reached by the California Supreme Court: if the General Assembly intended to impose individual liability under FEPA, it could and would readily have done so without resorting to the markedly unclear and ambiguous language contained in § 28-5-7(6). We do not believe that the General Assembly would mandate so far-reaching a result by speaking in so veiled and cryptic a manner.

Accordingly, after extensive review of the relevant statute and considerable reflection, we answer the certified question in the negative—§ 28-5-7(6) does not provide for the individual liability of an employee of a defendant employer.[10]

---

[9] California Gov't Code § 12940(i) (West 2016) states that it is an unlawful employment practice, "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

[10] While we have based our response to the certified question on our own jurisprudence and principles of statutory construction, we note with great interest that the United States Court of Appeals for the First Circuit has reached a decision that is quite comparable to the instant decision in its construction of Title VII (42 U.S.C. § 2000e et seq.). See Fantini v. Salem State College, 557 F.3d 22, 28 (1st Cir. 2009). In construing our own employment discrimination statute, we have often looked for guidance to federal jurisprudence. See, e.g., Weeks v. 735 Putnam Pike Operations, LLC, 85 A.3d 1147, 1156 n.11 (R.I. 2014). And we are pleased to note that our reasoning with respect to the instant case contains similarities to the reasoning of the First Circuit with respect to the federal statute.

**B**

**Deference to Agency Interpretation**

The Rhode Island Commission for Human Rights (RICHR) points out, in its amicus curiae brief, that it is the administrative agency to which has been confided a significant role with respect to the administration and enforcement of FEPA and that it has "a long history of holding individual non-employer respondents liable for aiding and abetting discrimination." The agency urges us to give deference to its reading of FEPA. However, deferential consideration of the approach of RICHR with respect to the issue of individual liability does not alter our ultimate legal conclusion under the particular circumstances of the instant case.

We are well aware that this Court has stated that, "[i]f a statute's requirements are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Duffy v. Powell, 18 A.3d 487, 490 (R.I. 2011) (quoting State v. Swindell, 895 A.2d 100, 105 (R.I. 2006)); see also Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 345 (R.I. 2004); Pawtucket Power Associates Limited Partnership v. City of Pawtucket, 622 A.2d 452, 456-57 (R.I. 1993); Berkshire Cablevision of Rhode Island, Inc. v. Burke, 488 A.2d 676, 679 (R.I. 1985).

However, it should not be forgotten that we have also expressly stated that an agency's interpretation is "not controlling" and, further, that "regardless of * * * deference due, this Court always has the final say in construing a statute." In re Proposed Town of New Shoreham Project, 25 A.3d 482, 506 (R.I. 2011); see also Berkshire Cablevision of Rhode Island, Inc., 488 A.2d at 679. We certainly have never suggested that we owe any administrative agency's interpretation blind obeisance; rather, the "true measure of a court's willingness to defer to an

- 13 -

agency's interpretation of a statute 'depends, in the last analysis, on the persuasiveness of the interpretation, given all the attendant circumstances.'" Unistrut Corp. v. State of Rhode Island Department of Labor and Training, 922 A.2d 93, 101 (R.I. 2007) (quoting United States v. 29 Cartons of * * * an Article of Food, 987 F.2d 33, 38 (1st Cir. 1993)). In the instant case, we are confronted with widely divergent opinions from other jurisdictions as well as from courts within this state.[11] In addition, rather than being confronted with a fact-intensive issue or an issue of a technical nature, we are in this case considering a pure question of law, which does not require special expertise beyond what the members of this Court possess. See Arnold v. Rhode Island Department of Labor and Training Board of Review, 822 A.2d 164, 167 (R.I. 2003) (stating, in the context of an appeal from a decision of an administrative agency, that this Court is "free * * * to conduct a de novo review of determinations of law made by an agency"); see also Rossi v. Employees' Retirement System, 895 A.2d 106, 110 (R.I. 2006). Accordingly, under the circumstances of this case, any deference due to RICHR's interpretation of § 28-5-7(6) simply does not overcome our conviction that, if the General Assembly intended § 28-5-7(6) to provide for individual liability, it would not have used language so abstruse to accomplish its aim.

## IV

### Conclusion

For the reasons set forth in this opinion, we answer the question certified to us in the negative—§ 28-5-7(6) does not provide for the individual liability of an employee of a defendant employer. The papers in this case may be remanded to the United States District Court for the District of Rhode Island for further proceedings.

---

[11] See footnotes 3 and 4, supra.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Mark Mancini v. City of Providence et al. |
| **Case Number** | No. 2014-88 <br> (13-92 S) |
| **Date Opinion Filed** | March 8, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson |
| **Source of Appeal** | Certified Question by the United States District Court for the District of Rhode Island in accordance with Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure. |
| **Judicial Officer From Lower Court** | Chief Judge William E. Smith of the United States District Court for the District of Rhode Island |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Mark P. Gagliardi, Esq. <br> Alicia Mary Connor, Esq. <br><br> For Defendant: <br><br> Kevin F. McHugh, Esq. <br> Kathryn M. Sabatini, Esq. |