**Supreme Court**

No. 2015-18-Appeal.
(PC 09-5310)

High Steel Structures, Inc.          :

v.                                    :

Cardi Corporation et al.             :

v.                                    :

State of Rhode Island and Providence  :
Plantations, Department of Administration,  :
Division of Purchases.                :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

High Steel Structures, Inc.      :

v.      :

Cardi Corporation et al.      :

v.      :

State of Rhode Island and Providence      :
Plantations, Department of Administration,      :
Division of Purchases.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Indeglia, for the Court.**  This matter comes before the Court on appeal from the Superior Court's grant of summary judgment in favor of the State of Rhode Island (the state) in a third-party action for breach of contract brought by Cardi Corporation (Cardi) in response to a suit by High Steel Structures, Inc. (High Steel).  At issue was Cardi's contract with the state to construct a portion of a prodigious highway construction project dealing with Interstate 195 in Rhode Island (I-Way Project).  Specifically, this case arises from Cardi's subcontract with High Steel to supply steel for this project and High Steel's assertion that it was never paid for 182,873 pounds of temporary steel bracing.[1]  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] For purposes of this opinion, the phrase "temporary steel bracing" is used interchangeably with "temporary cross braces," "temporary cross frames," "temporary steel," "temporary bracing," and "Grade 36 Steel."

# I

## Facts and Travel

The I-Way Project is a multiyear, multi-faceted highway construction endeavor for various parts of Interstate 195. In 2004, the state released details regarding Contract 6, one of fifteen I-Way Project contracts, which provided for "the construction of a series of new tub-girder bridges and ramps, along with associated public way and utility relocations and improvements." In this regard, the state retained Maguire Group, Inc. (Maguire) as the project's managing consultant and engineer of record.[2] Contract 6, the contract from which this dispute emanates, detailed plans to construct I-Way ramps labeled "NE, WS, WES and SE." Completion of Contract 6 required the use of various materials, including temporary cross braces. The temporary bracing in question, Grade 36 steel, was used for work identified as Item No. 312,[3] Item Code 824.9921, in the "Distribution of Quantities."[4] Item No. 312 was the item for Grade 50 structural steel. There was no separate line item listing the weight for the Grade 36 temporary bracing steel.

The bid-submission deadline was set for July 30, 2004.[5] Prior to the bid deadline, on June 29, 2004, the state held a conference to address potential bidders' questions or concerns relative to Contract 6.

---

[2] Maguire was responsible for overseeing project design, reviewing bid packages and contractor-submitted shop drawings, and responding to contractors' information requests. Further, Maguire maintained responsibility for evaluating issues that arose throughout the construction process.

[3] As a bid-item contract, Contract 6 broke down materials to be supplied into distinct work items. The work item pertinent to this dispute, as referenced in the Distribution of Quantities, is Item No. 312.

[4] Contract 6's Distribution of Quantities listed work items and set forth their project station and location. Item No. 312, Item Code 824.9921, in the Distribution of Quantities, was described as "AASHTO M270 Grade 50 Steel Furnish Fab. & Erect."

[5] The state originally set the bid-submission date for July 16, 2004, but it was extended.

On July 22, 2004, the state received a question from a prospective bidder concerning payment for temporary cross braces. Specifically, the contractor inquired, "What is the pay item for the temporary A36 steel braces between the tub beams?" In light of this question, on July 27, 2004, the state, in collaboration with Maguire, prepared and released Addendum No. 7 to Contract 6. This addendum issued a "Clarification," which provided:

> "[T]emporary bracing between girders on Bridges NE, WS and SE is not measured separately for payment. All costs associated with the temporary braces, filler bolts and field touch up are considered as incidental and shall be included in the structural steel items of work. For further clarification see changes to notes on sheets NE 45, WS 51, SE 21 found elsewhere in this Contract Addendum."

Additionally, the state modified the field notes associated with each Contract 6 ramp to track the language of Addendum No. 7.[6]

At the conclusion of bidding, the state selected Cardi as the general contractor for Contract 6. Cardi was the lowest bidder, with a contract price of $63,991,186.42, nearly $900,000 less than the next lowest bidder. On September 10, 2004, Cardi subcontracted with High Steel for the latter to provide—among other items—temporary cross frames. High Steel bid $2.343 per pound on Item No. 312; and, using this bid price, Cardi bid $2.58 per pound for that item. High Steel's contract with Cardi specifically excluded certain items, namely "field measurements or surveys, stud shear connectors, scuppers or any other bridge drainage, scupper supports, bearings, bearing pads, anchor bolts, field touch up paint, stenciling or painting." High Steel's contract, however, included temporary cross frames. The state entered into a written contract with Cardi on October 29, 2004.

---

[6] The revised field notes reiterated, "All costs associated with the temporary bracing, filler bolts and field touchup shall be considered as incidental and shall be included in the structural steel items of work."

In preparing its subcontract bid with Cardi, High Steel confirmed "receipt of Addenda #1 through #7" and acknowledged that the state issued Addendum No. 7 to Contract 6 before it subcontracted with Cardi. Further, High Steel indicated that it reviewed Addendum No. 7 and understood it as conforming to the manner in which it prepared its bid. Neither Cardi nor High Steel changed its bid as a result of Addendum No. 7, nor did they request further clarification.

On July 31, 2008, in a letter addressed to the state, High Steel, by way of Cardi, claimed that it had not been paid for the temporary cross frames. The state consulted Maguire, which agreed that the temporary cross frames weighed 182,873 pounds, but nevertheless recommended against payment. It did so citing Addendum No. 7, the Distribution of Quantities, and the Rhode Island Department of Transportation Standard Specifications for Road and Bridge Construction (Blue Book).[7] As a result, the state did not pay Cardi (or High Steel) any additional amount.

On September 11, 2009, seeking payment for the temporary bracing, High Steel filed suit against Cardi and its surety, Safeco Insurance Company of America. On October 28, 2009, Cardi filed a third-party complaint seeking declaratory relief and indemnification from the state for any payment that High Steel might receive from Cardi. Cardi's complaint against the state further alleged breach of contract and quantum meruit/unjust enrichment.

Thereafter, the state and High Steel filed separate motions for summary judgment against Cardi.[8] High Steel argued that its "bid and invoices [were] consistent with Contract 6 and

_____

[7] The Blue Book sets forth the state's standard specifications for road and bridge construction. It "control[s] the work on all Rhode Island Department of Transportation construction contracts except where modified by Supplemental Specifications or the contract Special Provisions. In the event of conflict between the contract provisions and [the Blue Book], the contract provisions shall govern."

[8] Cardi, in a pleading filed with the Superior Court, opposed the state's summary-judgment motion, and, in a somewhat unusual move, it joined in High Steel's cross-motion for summary judgment against itself. From this point forward, High Steel and Cardi aligned themselves, uniting under the argument that the state breached its contract with Cardi.

Addendum No. 7," and that "[t]he [s]tate [was] not being asked to pay more than High Steel's original bid amount." High Steel also averred that its contract interpretation was corroborated by its significant industry experience and general industry practice. In support of its motion for summary judgment, the state argued that High Steel's interpretation as to how it bid other projects and general industry practice were not relevant in reviewing this contract. The state submitted that the specific and clear language of Contract 6, and the documents it incorporated by reference, supported its reading of the contract. After hearings on January 8 and April 9, 2013, the motion justice granted the state's motion for summary judgment against Cardi with respect to the breach-of-contract claim and denied High Steel's motion for summary judgment against Cardi.

The motion justice found, "based upon [his] review of the contract language and [his] review of the contract documents as a whole, primarily as outlined by the [s]tate, that the [s]tate should prevail on its motion for summary judgment." Further, the motion justice found that:

> "[T]he clear language of the contract indicates that the structural steel is supposed to be included in the price that High Steel should have accounted for, that the temporary bracing should have been included in the price because that's what the item is, Grade 50 structural steel. Temporary bracing, as the evidence has submitted, is not the same kind of structural steel, and the [s]tate clarified that to the bidders."

He determined that, based on the clear contract language, "The word 'incidental' and the way that it's interpreted would indicate that the cost of those items, and there are three items identified: Temporary braces, filler bolts, and field touchup, come within the same categorization."

Judgment was entered on November 8, 2013;[9] and, on November 15, 2013, Cardi and High Steel jointly filed a notice of appeal to this Court.

## II

## Standard of Review

"This Court reviews a trial justice's decision to grant summary judgment de novo." Boucher v. Sweet, 147 A.3d 71, 73 (R.I. 2016) (quoting Hyde v. Roman Catholic Bishop of Providence, 139 A.3d 452, 460 (R.I. 2016)). "We will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. (quoting Newstone Development, LLC v. East Pacific, LLC, 140 A.3d 100, 103 (R.I. 2016)). "The nonmoving party bears the burden of showing the existence of disputed issues of material fact by competent evidence; it cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Id. (quoting Danforth v. More, 129 A.3d 63, 68 (R.I. 2016)). Pertinent to this appeal, "[t]he determination of whether a contract's terms are ambiguous is a question of law to be decided by the [C]ourt." Botelho v. City of Pawtucket School Department, 130 A.3d 172, 176 (R.I. 2016) (quoting JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1142 (R.I. 2014)). Questions of law are reviewed de novo. Id.

---

[9] Both High Steel and Cardi consented to a final judgment with respect to any remaining counts. Cardi consented to an adverse judgment on its surviving claims against the state, and High Steel similarly consented to an adverse judgment on its remaining claims against Cardi.

## III

### Discussion

In their principal argument to us, appellants aver that Contract 6 and Addendum No. 7 are unambiguous and clearly require payment for temporary bracing steel. Nevertheless, they alternatively argue that, if ambiguity exists, it should be construed against the state as the drafter of these documents. The state also submits that the contract is unambiguous. It reads the contract, however, to support a different interpretation: that the bracing steel was an incidental component of the structural steel. Furthermore, the state suggests that this case is procedurally deficient because Cardi did not pay a separate filing fee as required by Article I, Rule 5(a) of the Supreme Court Rules of Appellate Procedure and, therefore, failed to perfect its appeal. In addition, the state asserts that this Court need not reach the merits of this appeal because High Steel lacks standing to enforce its interests against the state.

### A

### Contract Interpretation

Although both parties read Contract 6 and Addendum No. 7 as clear and unambiguous, each party, in its readings, gleans divergent meanings from them. The appellants assert that the contract language "require[d] that Cardi and High Steel be paid for the weight of the temporary bracing supplied to the state." On the other hand, the state contends that the trial justice correctly found that Contract 6 and Addendum No. 7 unambiguously required "that the weight of temporary cross braces was not to be measured separately and that all costs associated with them were incidental."

Both parties' contract interpretations stem from the formulas that they used to calculate and interpret the bid price for Item No. 312.[10] The appellants maintain that, in accord with its experience and industry practice,[11] it "built the costs of the temporary bracing into its bid by adding the costs of the bracing to the costs of the associated structural steel and dividing that number by the sum of the weight of the temporary steel and the weight of the structural steel."[12] The state contends that "Addendum No. 7 was clear that it required the bidder to adjust its price per pound upwards to reflect that all costs associated with the temporary cross braces were included in the structural steel item of work for bid Item 312."[13]

Here, because we perceive no ambiguity in the relevant contract language, "our judicial role becomes quite straightforward: the plain language of the [contract] is to be applied." Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island, 18 A.3d 495, 498 (R.I. 2011).[14] To this end, we begin our analysis with Addendum No. 7's plain language.

---

[10] We note that use of each formula results in a different price per pound of structural steel. The state's formula, which builds the cost (and, by implication, the weight) of temporary bracing into the cost of structural steel, produces a higher price per pound than the formula that appellants proffer.

[11] Although we acknowledge High Steel's vast "experience and expertise," which includes production of "approximately 250 bridges per year, nearly all in the United States and mostly public contracts," such experience and practice is not dispositive to interpretation of the specific language of Contract 6 and Addendum No. 7.

[12] The appellants' formula can be presented as:

$$\frac{\text{Cost of Temporary Steel} + \text{Cost of Structural Steel}}{\text{Weight of Temporary Steel} + \text{Weight of Structural Steel}} = \text{Structural Steel Price Per Pound}$$

[13] This formula can be displayed as:

$$\frac{\text{Cost of Temporary Steel} + \text{Cost of Structural Steel}}{\text{Weight of Structural Steel}} = \text{Structural Steel Price Per Pound}$$

[14] We recognize that we are first tasked with discerning whether Contract 6 and Addendum No. 7 are ambiguous. In this instance, this task is a simple one. Although "[i]t is true that there are times when a court must engage in what a poet called 'the intolerable wrestle [w]ith words and

Without "mak[ing] a fortress out of the dictionary[,]" dictionaries aid us in discerning a word's ordinary meaning. Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535, 543 (R.I. 2004) (quoting Cabell v. Markham, 148 F.2d 737, 739 (2d Cir. 1945)). Germane here, Addendum No. 7 states, "[T]emporary bracing * * * is not measured separately for payment. All costs associated with the temporary braces, filler bolts and field touch up are considered as incidental and shall be included in the structural steel items of work." "Separate" means "[t]o set or keep apart; disunite." The American Heritage Dictionary of the English Language 1587 (4th ed. 2009). "Incidental" is defined as "[o]f a minor, casual, or subordinate nature" and "[a] minor accompanying item or expense." Id. at 886. "Include" is defined as "[t]o take in as a part, element, or member." Id. at 887. With these definitions in mind, Addendum No. 7 instructs bidders to include all costs relative to temporary braces, filler bolts, and field touch up in the cost of structural steel, rather than individually measuring temporary bracing.

In addition to the definitions of the addendum language, the state's placement of the term "temporary braces" in relation to other words in Addendum No. 7 is instructive. Importantly, Addendum No. 7 groups its treatment of "costs associated with the temporary braces" with related items, "filler bolts and field touch up." These other items, notably, are not types of steel. Accordingly, a reading of Addendum No. 7 reveals that a contractor should treat the costs of temporary bracing the same way that it would account for costs associated with filler bolts and field touch up. Just as it would be illogical to group the weight of the filler bolts and field touch

meanings[,]' * * * this is no such time." Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island, 18 A.3d 495, 498 (R.I. 2011) (quoting T.S. Eliot, Four Quartets, "East Coker" pt. 2). "In fact, we do not actually construe an unambiguous contract; we simply consider the dictates of the plain language in the contract." Id.; see also Aetna Casualty & Surety Co. v. Sullivan, 633 A.2d 684, 686 (R.I. 1993) (highlighting that when contracts are "clear and unambiguous, judicial construction is eclipsed and the contract must be applied as written").

up with the weight of structural steel in calculating the structural steel price per pound, it would likewise be unreasonable to combine the weight of the temporary bracing—Grade 36 steel—with the weight of an entirely different steel, Grade 50 structural steel.[15]

This Court reads the plain language of the contract in the same manner as the state and the motion justice. The contract clearly articulated that, as with the other costs associated with, but incidental to, Work Item No. 312, all costs essential to temporary bracing were to be built into the price per pound of Grade 50 structural steel. As such, because we deem the contract clear and unambiguous, we need not address appellants' alternative arguments that flow from a determination of contract ambiguity.

**B**

**Remaining Claims**

Because the contract interpretation issue disposes of this instant appeal, it is not necessary to consider the state's additional arguments regarding the failure to pay a separate filing fee or lack of standing.

**IV**

**Conclusion**

For the reasons stated herein, we affirm the Superior Court's judgment. The record shall be remanded to that tribunal.

---

[15] Although at oral argument, counsel for appellants expressed uncertainty regarding the treatment of filler bolts and field touch up, it appears that the costs associated with these items were properly built into the cost of structural steel.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | High Steel Structures, Inc. v. Cardi Corporation et al. v. State of Rhode Island and Providence Plantations, Department of Administration, Division of Purchases. |
| **Case Number** | No. 2015-18-Appeal. (PC 09-5310) |
| **Date Opinion Filed** | January 20, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Stacey P. Nakasian. Esq.<br>Stephen D. Nelson, Esq. |
| | For Defendant:<br><br>Adam S. Sholes<br>Department of Attorney General |

SU-CMS-02A (revised June 2016)