February 12, 2018

| | | |
|---|---|---|
| John R. Grasso | : | |
| v. | : | No. 2016-83-Appeal. |
| | | (PC 13-3121) |
| Gina M. Raimondo et al. | : | |
| John R. Grasso | : | |
| v. | : | No. 2015-378-M.P. |
| | | (PC 14-4953) |
| Employees' Retirement System of Rhode | : | |
| Island. | : | |

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |  |
| --- | --- | --- |
| John R. Grasso | : |  |
| v. | : | No. 2016-83-Appeal. (PC 13-3121) |
| Gina M. Raimondo et al. | : |  |
| John R. Grasso | : |  |
| v. | : | No. 2015-378-M.P. (PC 14-4953) |
| Employees' Retirement System of Rhode Island. | : : |  |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  These consolidated cases come before the Supreme

Court on an appeal and on a petition for the issuance of a writ of certiorari to review a November

5, 2015 bench decision in Providence County Superior Court in favor of the plaintiff, John R.

Grasso.[1]  The defendants, Gina Raimondo, Frank Karpinski, the Employees' Retirement System

---

[1]     The first case before us (PC 13-3121) was commenced in Providence County Superior Court as a declaratory judgment action seeking a judgment that Mr. Grasso was not subject to the terms of G.L. 1956 §§ 45-21-23 and 45-21-24 with respect to his accidental disability pension. The defendants named in the complaint were as follows: Gina M. Raimondo, individually and in her capacity as chairperson of the Employees' Retirement System of Rhode Island (the ERSRI); Frank J. Karpinski, individually and in his capacity as Executive Director of the ERSRI; the ERSRI; and the State of Rhode Island.  Gina Raimondo (who is currently serving as Governor of the State of Rhode Island) and Frank Karpinski prevailed in Superior Court in their individual capacities, and that portion of the Superior Court judgment is not the subject of the appeal to this Court.  Therefore, as to Governor Raimondo and Mr. Karpinski, we are concerned only with the claims against them in their representative capacities.

- 1 -

of Rhode Island (the ERSRI), and the State of Rhode Island, contend before this Court that the trial justice erred in determining that Mr. Grasso need not comply with G.L. 1956 §§ 45-21-23 and 45-21-24 in order to continue receiving his accidental disability pension because those sections were not applicable to his situation.

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## I

## Facts and Travel

The facts in the instant case are relatively limited and are not in dispute. We rely on the complaints filed in PC 13-3121 and PC 14-4953 for our recitation of the pertinent facts.

Mr. Grasso was a member of the Cranston police force when, on June 18, 2000, he suffered a debilitating injury while performing his duties as a police officer. When he was unable to return to work as a police officer, he applied for an accidental disability pension pursuant to the terms of G.L. 1956 chapter 21.2 of title 45. On September 12, 2002, Mr. Grasso was granted an accidental disability pension. Over ten years later, on September 20, 2012, Mr. Grasso received a letter from the Retirement Board of the ERSRI advising him that his pension "had been overpaid." The letter stated that, for that reason, his pension would be suspended on September 30, 2012. According to Mr. Grasso's complaint in PC 13-3121, the September 20, 2012 letter requested that he provide copies of his tax returns for the years 2003 to 2009 as well as "medical progress notes" from his treating physician from 2003 through 2011. The letter

The second of the cases before us (PC 14-4953) came to the Superior Court, as an appeal by Mr. Grasso from a decision of the Retirement Board of the ERSRI finding that Mr. Grasso was subject to §§ 45-21-23 and 45-21-24. The sole adverse party in that case was the ERSRI.

The two cases, PC 13-3121 and PC 14-4953, were consolidated in Superior Court, and a single bench decision was issued. The defendants have appealed in PC 13-3121 and petitioned for the issuance of a writ of certiorari in PC 14-4953, which petition this Court granted on November 28, 2016. We have consolidated the cases for the purposes of this appeal.

- 2 -

further informed him that he might be required to undergo an independent medical examination (IME) pursuant to § 45-21-23(a).  After providing what the complaint in PC 13-3121 refers to as "certain medical documentation" to the Retirement Board, Mr. Grasso was notified that he was to contact a particular doctor to schedule an IME.  On May 9, 2013, Mr. Grasso's counsel met with the Retirement Board's counsel to detail Mr. Grasso's belief that his pension was not governed by § 45-21-23, which states that the Retirement Board may require a disability annuitant to undergo an IME at least once a year, and § 45-21-24, which provides that the Retirement Board shall adjust the amount of a disability annuitant's pension based upon the beneficiary being engaged in a "gainful occupation."[2]  Subsequent to that meeting, on June 27, 2013, Mr. Grasso proceeded to file his declaratory judgment action in PC 13-3121.[3]

Also subsequent to that May 9, 2013 meeting, on May 28, 2013, the Executive Director of the ERSRI rendered an administrative decision wherein he rejected Mr. Grasso's contention that the ERSRI was not entitled to require him to undergo an IME or to adjust the amount of his pension based on his gainful employment as an attorney.  Consequently, Mr. Grasso requested a hearing before the Retirement Board of the ERSRI.  The Retirement Board appointed a hearing officer to hear Mr. Grasso's matter.  On September 12, 2013, a hearing was conducted before the hearing officer; and, on August 1, 2014, the hearing officer issued a decision rejecting Mr. Grasso's arguments.  On September 25, 2014, the Retirement Board rendered its decision upholding the hearing officer's determination in the case.  Subsequently, on October 8, 2014, Mr. Grasso appealed the ERSRI's decision to affirm the hearing officer to the Superior Court in PC 14-4953.

---

[2]     As the trial justice noted in her bench decision, Mr. Grasso was gainfully employed as an attorney at the pertinent time.

[3]     On September 9, 2013, defendants in PC 13-3121 filed a motion to dismiss, which was subsequently denied.

On December 1, 2014, the Superior Court consolidated the two cases—PC 13-3121 and PC 14-4953. Thereafter, on June 22, 2015, Mr. Grasso moved for summary judgment in the declaratory judgment action (PC 13-3121) and, on August 28, 2015, a corresponding cross-motion for summary judgment was filed. Subsequently, on November 5, 2015, the trial justice rendered a bench decision in Mr. Grasso's favor in the consolidated cases. The defendants subsequently filed a notice of appeal in PC 13-3121 and a petition for the issuance of a writ of certiorari in PC 14-4953, which petition this Court granted.

## II

### Issues Presented

Before this Court, defendants contend that the trial justice erred in denying their motion to dismiss PC 13-3121. They further posit that the trial justice misinterpreted the effect that a 1980 amendment to G.L. 1956 § 45-21.2-10 had on Mr. Grasso's accidental disability pension in reaching her decision in the case. Additionally, defendants aver the following: (1) that the trial justice did not give proper deference to the ERSRI's interpretation of the relevant statutes; (2) that the ERSRI is entitled to administer the pension authorized by chapter 21.2 of title 45 in the same manner as it administers pensions pursuant to chapter 21 of title 45, including applying §§ 45-21-23 and 45-21-24; (3) that the trial justice reached an absurd result; (4) that the trial justice incorrectly found § 45-21.2-10 to be unambiguous; and (5) that the General Assembly should not "be presumed to have granted a special pension benefit solely to one class of retirees in violation of statute."

## III

## Standard of Review

Due to the fact that these consolidated cases come before this Court in different procedural postures, we will detail the standard of review applicable to each action.

In PC 13-3121, the trial justice granted Mr. Grasso's motion for summary judgment and issued a declaratory judgment. This Court reviews a trial justice's decision to grant summary judgment in a *de novo* manner. *High Steel Structures, Inc. v. Cardi Corporation*, 152 A.3d 429, 433 (R.I. 2017); *see also Daniels v. Fluette*, 64 A.3d 302, 304 (R.I. 2013). This Court "will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *High Steel Structures, Inc.*, 152 A.3d at 433 (alteration in original) (internal quotation marks omitted); *see also Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc.*, 45 A.3d 571, 574 (R.I. 2012).

With respect to the decision of a trial justice to grant or deny declaratory relief, our standard of review is deferential. *Bruce Brayman Builders, Inc. v. Lamphere*, 109 A.3d 395, 397 (R.I. 2015). However, "a trial justice's discretion to grant or deny declaratory relief is not absolute and is subject to appropriate appellate review." *Id.* (internal quotation marks omitted); *see also Rhode Island Republican Party v. Daluz*, 961 A.2d 287, 293 (R.I. 2008). Factual findings made by the trial justice "are afforded great weight by this Court, and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Plainfield Pike Development, LLC v. Victor Anthony Properties,*

*Inc.*, 160 A.3d 995, 1002 (R.I. 2017) (internal quotation marks omitted). However, "[a] trial justice's findings on questions of law * * * are reviewed *de novo*." *Id.* (internal quotation marks omitted); *see also Town Houses at Bonnet Shores Condominium Association v. Langlois*, 45 A.3d 577, 581 (R.I. 2012).

The second case before this Court—PC 14-4953—was an administrative appeal. The standard of review to be applied in such cases is detailed in G.L. 1956 § 42-35-15(g) as follows:

> "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Affected by other error or law;
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

We have generally followed the principle that, if a statute's requirements "are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." *State v. Swindell*, 895 A.2d 100, 105 (R.I. 2006) (internal quotation marks omitted); *see also Town of Richmond v. Rhode Island Department of Environmental Management*, 941 A.2d 151, 157 (R.I. 2008). However, as we have recently stated, we do not owe any "administrative agency's interpretation blind obeisance; rather, the true measure of a court's willingness to defer to an agency's interpretation of a statute depends, in the last analysis, on the persuasiveness of the interpretation, given all the attendant circumstances." *Mancini v.*

*City of Providence*, 155 A.3d 159, 168 (R.I. 2017) (internal quotation marks omitted). Moreover, "regardless of * * * deference due, this Court always has the final say in construing a statute." *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 506 (R.I. 2011); *see also Mancini*, 155 A.3d at 168. As such, while the Court affords an agency's factual findings great deference, "questions of law—including statutory interpretation—are reviewed *de novo*." *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008).

Accordingly, and in the interest of absolute clarity given the two actions before us, it is our judgment that, in reviewing the decision of the trial justice in the instant case, we shall apply a *de novo* standard of review. Our precedent makes clear that a *de novo* standard is applicable in this case due to the fact that we are confronted with a grant of summary judgment in a declaratory judgment action which encompasses a purely legal issue dealing with statutory construction. *See Plainfield Pike Development, LLC*, 160 A.3d at 1002; *High Steel Structures, Inc.*, 152 A.3d at 433; *Iselin*, 943 A.2d at 1049. We need not accord to the Retirement Board the deference we might otherwise accord if the issue presented to us were not one based in statutory construction. *See Mancini*, 155 A.3d at 168; *In re Proposed Town of New Shoreham Project*, 25 A.3d at 506.

## IV

## Analysis

In order to properly address defendants' contentions on appeal, we must discuss in detail the relevant statutory sections. We are concerned in the instant case with chapters 21 and 21.2 of title 45 of the Rhode Island General Laws. Chapter 21 of title 45 is entitled "Retirement of Municipal Employees," whereas chapter 21.2 of title 45 is entitled "Optional Retirement for

Members of Police Force and Fire Fighters."  It is undisputed that § 45-21.2-10 is the principal statute at issue and that it applies to Mr. Grasso.  What is to be decided is the applicability of §§ 45-21-23 and 45-21-24.

Section 45-21.2-10 is entitled "Accidental disability allowance" and currently reads as follows:

> "The amount of retirement allowance for accidental disability is that as prescribed in § 45-21-22."[4]

However, prior to being amended in 1980 by P.L. 1980, ch. 59, § 2, § 45-21.2-10 read in its entirety as follows:

> "Upon retirement for accidental disability, a member shall receive a retirement allowance equal to sixty-six and two-thirds per cent (66 2/3%) of the rate of his compensation at the date of disability. Any member retiring and receiving a disability allowance shall be subject to the provisions of §§ 45-21-23 and 45-21-24."

Mr. Grasso argued before the Superior Court that the 1980 amendment to § 45-21.2-10 rendered §§ 45-21-23 and 45-21-24 inapplicable to an individual receiving an accidental disability pension pursuant to chapter 21.2 of title 45.

Section 45-21-23, in pertinent part, provides a mechanism to require annual IMEs:

> "(a) At least once each year the retirement board may, and upon application shall, require any disability annuitant under the minimum age for service retirement, whether in receipt of an ordinary disability retirement allowance or an accidental disability retirement allowance, to undergo a medical examination, the examination to be made at the place of residence of the annuitant, or other place mutually agreed upon, by a physician or physicians engaged by the retirement board."

---

[4]      Section 45-21-22 provides as follows:

> "Upon retirement for accidental disability, a member receives a retirement allowance equal to sixty-six and two-thirds percent (66 2/3%) of the rate of the member's compensation at the date of the member's retirement subject to the provisions of § 45-21-31."

- 8 -

Section 45-21-24 reads as follows:

> "(a) Should the beneficiary be engaged in a gainful occupation or should the beneficiary be offered service as a result of the placing of his or her name on a list of candidates, the retirement board shall adjust, and from time to time readjust, the amount of his or her disability allowance to an amount which, when added to the amount of compensation then earnable by the beneficiary, shall not exceed the rate of earnable compensation currently in force for the classification that the disability annuitant held prior to retirement.

> "(b) Should any disability annuitant under the minimum age of retirement refuse to submit to a medical examination in any year by a physician or physicians designated by the retirement board, the annuitant's retirement allowance may be discontinued until the annuitant's withdrawal of the refusal, and should the annuitant's refusal continue for one year after a request has been made, all the annuitant's rights in and to the retirement allowance may be revoked by the retirement board. A disability annuitant, reinstated to active service, shall be reinstated as a member and participate in the benefits of the retirement system to the same extent as any other member."

Accordingly, the issues before the Court are whether or not, under the post-1980 version of § 45-21.2-10, the ERSRI can require an annuitant receiving an accidental disability pension pursuant to chapter 21.2 of title 45 to undergo annual IMEs—as provided for in § 45-21-23—and whether or not the ERSRI can consider the annuitant's other earnings in determining the amount of his or her pension—as provided for in § 45-21-24.

The trial justice held that Mr. Grasso was not subject to §§ 45-21-23 and 45-21-24. She began by addressing the declaratory judgment action that was pending before her. In her judgment, § 45-21.2-10 was "clear and unambiguous" and addressed "only the amount of the benefit," without reference to §§ 45-21-23 and 45-21-24. She further found that § 45-21-22, to which § 45-21.2-10 refers, was also clear and unambiguous and required no "judicial interpretation." The trial justice proceeded to reject defendants' arguments that a ruling in Mr.

- 9 -

Grasso's favor would produce an absurd result. She stated that "the Legislature knew what they were doing and made a decision to do it;" and she added the following:

> "Police officers and firefighters are subject to a variety of very dangerous risks on a daily basis. The recognition of these risks likely prompted the alternate retirement system in the first place. The Legislature sought to retain the IME adjustment provisions for those firefighters and police officers who suffered from ordinary disability. But when it came time to look at it as it related to on-the-job injuries, they chose to go in a different direction.
> "It is not absurd to find that the Legislature intended to provide those facing such risks with a more appealing retirement plan in the event that those risks materialized into actual harms."

The trial justice also opined that "the General Assembly knew exactly what they were doing when they amended 45-21.2-10 and did so * * * to remove the obligations under 45-21-23 and 24 * * *. The Court finds no support for any argument that they did it other than by design." In accord with that just-summarized reasoning, the trial justice then granted Mr. Grasso's motion for summary judgment and denied the cross-motion for summary judgment.[5]

The trial justice then turned her attention to the administrative appeal. She stated that she was giving the Retirement Board's interpretation a "lower level of deference," as opposed to "broad deference," because the issue was "one of pure statutory interpretation," not requiring any "[t]echnical or specialized expertise." The trial justice then referred back to her bench decision with respect to the declaratory judgment action and found the Retirement Board's decision to be "erroneous;" she reversed that decision.

---

[5] The trial justice denied the cross-motion for summary judgment except for "the individual nature of the claims against Raimondo and Karpinski;" as previously discussed (*see* footnote 1, *supra*), Governor Raimondo and Mr. Karpinski prevailed in Superior Court on the claims against them in their individual capacities. That portion of the Superior Court judgment is not contested on appeal before this Court.

In conducting our *de novo* review in this case, we remain cognizant of Justice Felix Frankfurter's statement that "[t]he search for significance in the silence of [the Legislature] is too often the pursuit of a mirage." *Scripps-Howard Radio, Inc. v. Federal Communications Commission*, 316 U.S. 4, 11 (1942). We have struggled long and hard in pursuing that mirage in the instant case. In the end, it is our judgment that, while we admire the trial justice's thoroughness and respect her perspective, we simply cannot agree with her conclusion. We do agree with the trial justice that granting an accidental disability pension which would continue with no requirement for submitting to IMEs or for the reporting of other gainful employment would not necessarily be absurd; the General Assembly may well have the residual right to provide for such a pension. However, the General Assembly would have to be pellucidly explicit if it should wish to do something so extraordinary. Statutory silence alone is quite inadequate to convey such an intent in a case of this nature.

We begin our analysis with the basic principle of statutory construction that, when a statutory section is clear and unambiguous, we apply the plain and ordinary meaning of the statute and we need not delve into any further statutory interpretation. *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014). "It is only when a statute is ambiguous that we apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Id.* (internal quotation marks omitted).

Prior to 1980, § 45-21.2-10 contained an explicit reference to §§ 45-21-23 and 45-21-24. However, in 1980 the removal of the explicit reference to those statutory sections was not the only change made by the General Assembly. The entire then-existing section was removed and replaced by a simple cross-reference to § 45-21-22. It is unclear whether or not that reference to § 45-21-22 was meant to also encompass other sections of chapter 21, since those sections would

apply to any pensions provided by § 45-21-22. Moreover, §§ 45-21-23(a) and 45-21-24(b), by their blunt language, apply to "*any* disability annuitant." (Emphasis added.) Creating further ambiguity, § 45-21.2-4 provides that the optional retirement system provided for in chapter 21.2 is to be "administered in the same manner provided in chapter 21"—while leaving the term "administered" utterly devoid of any clarifying definition.[6] For these reasons, it is self-evident to us that there is substantial ambiguity as to which sections of chapter 21 apply to an accidental disability pension under chapter 21.2.

In attempting to resolve that ambiguity, we are mindful of the fact that, "[i]n matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012) (internal quotation marks omitted); *see also Harvard Pilgrim Health Care of New England, Inc. v. Gelati*, 865 A.2d 1028, 1038 (R.I. 2004) ("We are mindful that our interpretation should not construe [the] statute to reach an absurd or *unintended* result.") (alteration in original) (emphasis added) (internal quotation marks omitted). As such, it would be inappropriate for us to look at § 45-21.2-10 in a vacuum; we must consider it in light of the entire statutory scheme. *See State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013) ("[W]e must consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.") (internal quotation marks omitted); *State v. Campbell*, 528 A.2d 321, 329 (R.I. 1987); *see also* 2A Norman J. Singer and J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:5 at 204 (7th ed. 2014) (stating that "each part or section [of a statute] should be construed in connection with every other part or section to

---

[6]  We acknowledge that, subsequent to the 1980 amendment to § 45-21.2-10, other sections of chapter 21.2 still contained cross-references to chapter 21. However, we cannot say that that fact is sufficient to render the pertinent statutory scheme unambiguous or to permit us to determine that §§ 45-21-23 and 45-21-24 are not applicable to Mr. Grasso.

produce a harmonious whole"). Moreover, we have stated that "[i]n effectuating the Legislature's intent, we review and consider the statutory meaning most consistent with the statute's policies or obvious purposes." *Bailey v. American Stores, Inc./Star Market*, 610 A.2d 117, 119 (R.I. 1992); *see, e.g.*, *Harvard Pilgrim Health Care of New England, Inc.*, 865 A.2d at 1038 (stating that this Court was "[s]tepping back from the lower court's overly narrow focus on individual passages" and noting that "the purpose of these provisions appears to be protecting insurance companies teetering on the brink of insolvency from a feeding frenzy of litigation"). We consider the following venerable and perceptive maxim of statutory construction so felicitiously worded by the California Supreme Court to be an especially helpful guide in this matter:

> "Wherever possible, a statute is to be construed in a way which will render it reasonable, fair and harmonious with its manifest purpose, and which will conform with the spirit of the act. * * * Therefore, * * * when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent." *Los Angeles County v. Frisbie*, 122 P.2d 526, 532 (Cal. 1942) (internal quotation marks omitted).

The purpose of chapter 21.2 is to provide a retirement system for police officers and firefighters—a system municipalities in Rhode Island have the option of utilizing. Its specific purpose is to provide for an accidental disability pension for a police officer or firefighter who is injured on the job and cannot work due to his or her disability. We simply cannot say, based on the statutory scheme with which we are confronted, that the intent and purpose of the statutes was to provide such a benefit for life regardless of whether or not the police officer or firefighter is still disabled or is able to earn from another source the same (or greater) income than he or she would have earned as a police officer or firefighter. Based on the purpose of the statute—to

- 13 -

provide a pension to a police officer or firefighter who is disabled and cannot work—it is our unblinking view that the most plausible interpretation of this ambiguous statutory scheme is that the General Assembly intended for an accidental disability pension under § 45-21.2-10 to be subject to the IME and income-reporting requirements of §§ 45-21-23 and 45-21-24. *See Frisbie*, 122 P.2d at 532; *see also Bailey*, 610 A.2d at 119. Otherwise, this Court would be failing to follow the most reasonable, fair, and harmonious construction of the statutory scheme. *See Frisbie*, 122 P.2d at 532.

We are buoyed in our conclusion about the statutory issue before us by the oft-repeated metaphorical maxim relied upon by the United States Supreme Court to the effect that a legislature, in enacting statutes, is not wont to "hide elephants in mouseholes." *Whitman v. American Trucking Associations, Inc.*, 531 U.S. 457, 468 (2001); *see also Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 984 (2017); *Environmental Protection Agency v. EME Homer City Generation, L.P.*, 134 S.Ct. 1584, 1612 (2014) (Scalia, J., dissenting); *Bilski v. Kappos*, 561 U.S. 593, 645 (2010) (Stevens, J., concurring). We have no reason to infer in the instant case that the General Assembly hid an elephant in a mousehole and intended an otherwise quite unlikely result in such an important context when no language in the statute clearly evinces such an intent. *See, e.g.*, *Czyzewski*, 137 S.Ct. at 984 ("The importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure."); *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S.Ct. 1938, 1947 (2016) ("Had Congress intended to alter th[is] fundamental detai[l] of municipal bankruptcy, we would expect the text of the amended definition to say so.") (alteration in original) (internal quotation marks omitted); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2796 (2014) (Ginsburg, J., dissenting) ("Had Congress intended [the Religious Freedom Restoration Act of 1993] to initiate

a change so huge, a clarion statement to that effect likely would have been made in the legislation."); *Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000) ("[W]e are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion."), *superseded by statute*, 21 U.S.C. § 387a.[7] To determine to the contrary would require us to answer the following question posed by defendants in the affirmative:

> "Can a policeman, after being retired for accidental disability have a full recovery, become a major league baseball pitcher with a multimillion dollar annual contract, and still collect his full disability pension from the Municipal Employees' Retirement System of the State of Rhode Island?"

We have absolutely no statutory basis for doing so—at least not without an explicit statement from the General Assembly communicating such an intent. The General Assembly has not sounded a clarion call to that effect, but it has left us to grapple with the sounds of silence.

In conclusion, we acknowledge that the General Assembly may well have the residual right to provide for an accidental disability pension without the requirement of periodic IMEs or the reporting of other gainful employment. However, we reiterate that the General Assembly would have to be pellucidly explicit if it should wish to do something so extraordinary in such an important context; it would require much more tangible evidence of legislative intent than the stark statutory silence left after the 1980 amendment to § 45-21.2-10. Accordingly, we hold that Mr. Grasso is subject to §§ 45-21-23 and 45-21-24; and he may be required to undergo an IME from time to time at the direction of the Retirement Board and to submit such financial information as may be requested in accordance with § 45-21-24.

---

[7] Although the United States Supreme Court's opinion in *Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), has been superseded by statute, the approach to statutory construction articulated in that opinion on which we rely is not affected by the statute superseding its ultimate holding.

# V

## Conclusion

For the reasons stated in this opinion, we vacate the judgment of the Superior Court. We remand the record to that tribunal.

**Chief Justice Suttell, dissenting.** The majority decries the lack of a clarion call signaling legislative intent and observes that it, therefore, must grapple with the sounds of silence. Yet it hears a veritable symphony within that statutory silence.

The first movement is a lively allegro of statutory references and cross-references in which the majority seeks to create dissonance and ambiguity. It reads into the post-1980 version of G.L. 1956 § 45-21.2-10 the pre-1980 references to G.L. 1956 §§ 45-21-23 and 45-21-24, references which the General Assembly conspicuously omitted in the 1980 amendment (P.L. 1980, ch. 59, § 2). The majority then looks to the cross-reference in the post-1980 version of § 45-21.2-10 to § 45-21-22 and opines that the General Assembly may have intended that one "simple cross-reference" to encompass other sections of chapter 21 of title 45—notwithstanding the fact that it removed the specific cross-references to §§ 45-21-23 and 45-21-24.

The majority also finds disharmony in § 45-21.2-10 by examining the "blunt language" of §§ 45-21-23(a) and 45-21-24(b) which provide that these latter sections apply to "*any* disability annuitant." Finally, in a climactic crescendo, the majority notes that further ambiguity is created by § 45-21.2-4, which provides that the optional retirement system under chapter 45-21.2 is to be "administered in the same manner provided in chapter 21." Yet it turns a deaf ear to the second verse of § 45-21.2-4 that "where the provisions of [chapter 21] conflict with [chapter 21.2], then the provision of * * * chapter [21.2] control."

In the second movement, more of an adagio, the majority attempts to resolve the discord it has perceived by construing § 45-21.2-10 in a manner that is "reasonable, fair, and harmonious." It does so by scoring back into § 45-21.2-10 the independent medical examination and income-reporting requirements of §§ 45-21-23 and 45-21-24. Finally, the concluding coda poses a rhetorical question involving an injured, but fully recovered, policeman with a multimillion-dollar baseball contract.

Although I applaud the compositional skills of the majority, I respectfully must depart from its analysis. In my view, § 45-21.2-10 does not result in an auditory void, nor does it create ambiguity. Rather, in very clear and crystalline notes it prescribes the amount of retirement allowance for accidental disability for police and firefighters under the optional retirement system created by chapter 21.2. Section 45-21.2-10 provides in its entirety: "The amount of retirement allowance for accidental disability is that as prescribed in § 45-21-22[,]" which section is itself clear and unambiguous.[8] One need and ought to go no further. Neither §§ 45-21.2-10 nor 45-21-22 reprise the requirements of §§ 45-21-23 and 45-21-24.

I might agree with my colleagues in the majority that, as a matter of policy, an accidental disability beneficiary under chapter 21.2 of title 45 should be subject to periodic medical examinations and a reduction of disability allowance if gainfully employed. The situation before us concerning Mr. Grasso is a prime example; and, *a fortiori*, the multimillion-dollar baseball player scenario approaches the absurd. Yet there are legitimate reasons for treating police and firefighters who receive an accidental disability retirement allowance differently from other

---

[8] General Laws 1956 § 45-21-22 provides: "Upon retirement for accidental disability, a member receives a retirement allowance equal to sixty-six and two-thirds percent (66⅔%) of the rate of the member's compensation at the date of the member's retirement subject to the provisions of § 45-21-31." Section 45-21-31 concerns an offset for workers' compensation benefits or damages received in a personal injury action; it has no bearing on the issues raised in this appeal.

accidental disability beneficiaries. In my view, it is a question of policy properly assigned to the legislature. I am simply not prepared to attempt to divine what the General Assembly intended to mean when it spoke in such clear and comprehensible language. Consequently, I respectfully dissent.

**Justice Flaherty, dissenting.** I respectfully dissent from the holding of the majority. I do so because G.L. 1956 § 45-21.2-10, clearly and unambiguously, states that "[t]he amount of retirement allowance for accidental disability is that as prescribed in § 45-21-22." The question we have been asked to decide is whether the language of that statute subjects the plaintiff to the additional requirements that are set forth in G.L. 1956 §§ 45-21-23 and 45-21-24. It is readily apparent from the above-quoted language that § 45-21.2-10 is silent on that question. However, that silence does not in and of itself create ambiguity, as the majority concludes. Rather, I am of the opinion that the words of the statute are crystal clear, "[t]he amount of retirement allowance for accidental disability is that as prescribed in § 45-21-22"—nothing more. A commonsense reading of § 45-21.2-10's plain language—language wholly devoid of any references to §§ 45-21-23 and 45-21-24—compels me, therefore, to conclude that the plaintiff is not subject to the IME and income-reporting requirements set forth in §§ 45-21-23 and 45-21-24. I must therefore dissent.

"Ambiguity exists only when a word or phrase in a statute is susceptible of more than one reasonable meaning." *Drs. Pass & Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011). As we have explained on multiple occasions, "[b]ecause ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate * * * the question is not whether there is an ambiguity in the metaphysical sense, but whether the language

- 18 -

has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 505 n.30 (R.I. 2011) (quoting *Lazarus v. Sherman*, 10 A.3d 456, 464 (R.I. 2011)). In my opinion, § 45-21.2-10 is not susceptible of more than one reasonable meaning, either in the metaphysical sense or through the application of common sense. The statute simply makes no mention of §§ 45-21-23 and 45-21-24; therefore, the requirements of those statutes should not be grafted onto the plain terms of § 45-21.2-10.

Respectfully, I cannot fathom where or how the majority perceives ambiguity. It is true that chapter 21.2 of title 45, on the whole, contains a number of express references to chapter 21 and that pursuant to § 45-21.2-4, chapter 21.2 is to be "administered in the same manner provided in chapter 21 * * *." The majority correctly notes that there are a number of cross-references to chapter 21 in chapter 21.2. Importantly, § 45-21.2-10 is one of those sections, but it refers only to § 45-21-22 and to no other section in the chapter. The lack of further cross-references, particularly to §§ 45-21-23 or 45-21-24, in § 45-21.2-10 helps to render, in the view of the majority, this statutory scheme ambiguous. To be sure, the General Assembly included certain cross-references to chapter 21 throughout chapter 21.2. Yet it did not include any references to §§ 45-21-23 and 45-21-24 in § 45-21.2-10. Therefore, I am compelled to conclude that § 45-21.2-10 does not require plaintiff to undergo an IME pursuant to § 45-21-23 or to report income pursuant to § 45-21-24.

We have long adhered to the presumption "that the General Assembly knows the 'state of existing relevant law when it enacts or amends a statute.'" *Power Test Realty Co. Limited Partnership v. Coit*, 134 A.3d 1213, 1222 (R.I. 2016) (quoting *Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 287 (R.I. 2004)). A corollary to

- 19 -

that presumption is that we should "resist speculating whether [a legislative body] acted inadvertently." *Hamer v. Neighborhood Housing Services of Chicago*, 138 S.Ct. 13, 20 (2017); *Dodd v. United States*, 545 U.S. 353, 357 (2005) ("We must presume that [the] legislature says * * * what it means and means * * * what it says * * *." (quoting *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992))). Thus, when the General Assembly amended chapter 21.2 in 1980 (P.L. 1980, ch. 59, § 2), we must presume that it knew exactly which provisions it deemed subject to chapter 21 and which it did not, and that it did not act through oversight, inadvertence, or neglect. With that in mind, I can conclude only that § 45-21.2-10 is deliberately silent on that point and that only § 45-21-22 applies to § 45-21.2-10 because that is the only section expressly mentioned. *See Shine v. Moreau*, 119 A.3d 1, 10 (R.I. 2015) ("[W]e adhere to 'the maxim that the plain statutory language is the best indicator of legislative intent.'" (quoting *Marques v. Pawtucket Mutual Insurance Co.*, 915 A.2d 745, 747 (R.I. 2007))). The statutory framework is not ambiguous and therefore should be construed as written.

Moreover, even if § 45-21.2-10 were ambiguous, as the majority has concluded, I would be persuaded nonetheless that its terms are not subject to §§ 45-21-23 and 45-21-24. In grappling with the ambiguity it somehow discovers in the statute, the majority properly embarks on an examination of "the entire statute to ascertain the intent and purpose of the Legislature." *Prew v. Employee Retirement System of Providence*, 139 A.3d 556, 560 (R.I. 2016) (quoting *Trant v. Lucent Technologies*, 896 A.2d 710, 712 (R.I. 2006)); *see also Mancini v. City of Providence*, 155 A.3d 159, 162-63 (R.I. 2017). Certainly, I do not quarrel with the majority's conclusion that the overall purpose underlying chapter 21.2 is to provide a retirement system for municipal police officers and firefighters. I do, however, diverge from the majority's illation

that interpreting § 45-21.2-10 in a manner that exempts plaintiff from the requirements set forth in §§ 45-21-23 and 45-21-24 would contravene legislative intent.

For me, to resolve any ambiguity which might lurk here, we need not look any further than the straightforward legislative history of § 45-21.2-10. To borrow a phrase from the venerable Justice Oliver Wendell Holmes, "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921). As the majority succinctly explains, prior to 1980, § 45-21.2-10 contained express references to §§ 45-21-23 and 45-21-24. Significantly, though, the General Assembly amended § 45-21.2-10 in 1980, deleting any and all references to those sections. In their place, the General Assembly inserted a reference to § 45-21-22. Since 1980, § 45-21.2-10 has remained unchanged. I can reach only one conclusion from that history: The General Assembly decided, in its legislative wisdom, that pensions governed by § 45-21.2-10 should not be subject to the requirements set forth in §§ 45-21-23 and 45-21-24.

Again, we have long operated under the presumption that "the General Assembly knows the 'state of existing relevant law when it enacts or amends a statute.'" *Power Test Realty Co. Limited Partnership*, 134 A.3d at 1222 (quoting *DiPrete*, 845 A.2d at 287). And we ought to do so with the notion that the General Assembly does not do so unwittingly. *Hamer*, 138 S.Ct. at 20. When the General Assembly deleted the language that would have subjected pensioners in plaintiff's position to §§ 45-21-23 and 45-21-24, the General Assembly made its intent known. *See Nolan v. Representative Council of Newport*, 73 R.I. 498, 501-02, 57 A.2d 730, 732 (1948) (explaining that this Court could not treat the General Assembly's deletion of a word "as a legislative oversight and supply the omitted word"); *see also Estate of Eglee*, 119 R.I. 786, 789-90, 383 A.2d 586, 588-89 (1978). The silence in § 45-21.2-10 was deliberate, and the meaning

of that deliberate silence is abundantly clear: Plaintiff is not subject to the requirements set forth in §§ 45-21-23 and 45-21-24.

This conclusion is buttressed by the fact that the General Assembly has expressly informed us that pensions subject to chapter 21 and accidental disability pensions subject to chapter 21.2 are to be treated differently. Indeed, § 45-21.2-4 mandates, "where the provisions of [chapter 21] conflict with [chapter 21.2], then the provision[s] of [chapter 21.2] control." It could not be clearer that, in amending § 45-21.2-10, the General Assembly opted to exempt pensioners governed by chapter 21.2 from the requirements of §§ 45-21-23 and 45-21-24.

According to § 45-21.2-10's plain language, plaintiff is not subject to the requirements of §§ 45-21-23 and 45-21-24. It may be unpalatable that plaintiff is not subject to a yearly IME or to income-reporting requirements, but that is for the General Assembly to determine, not this Court.[9] We should not rewrite the statute simply because we disagree with it.

Our holding today, adopting a rule that would require a clear, indeed "pellucid" statement by the General Assembly with respect to a municipal police officer's accidental disability pension is anathema to our case law and to political realities.[10] There are times when legislative silence speaks volumes. This is one of those times. As we have held, "[w]here the legislature in amending an act thus purposely omits words in the amended act the court has no authority to

---

[9] Of note, the statute governing the disability pensions of members of the state police is also silent with respect to whether the members of that department are subject to IME's or income-reporting requirements. *See* G.L. 1956 § 42-28-21(a).

[10] In the view of the majority, to convey that pensions governed by G.L. 1956 § 45-21.2-10 are not subject to the requirements set forth in G.L. 1956 §§ 45-21-23 and 45-21-24, the General Assembly would have been required to amend § 45-21.2-10 to read something along the lines of, "The amount of retirement allowance for accidental disability is that as prescribed in § 45-21-22. The requirements set forth in §§ 45-21-23 and 45-21-24 do not apply." Amendment by deletion is no longer an option. This is a remarkable statement by this Court.

supply the omitted words." *Nolan*, 73 R.I. at 502, 57 A.2d at 732. I see no reason to depart from such sound reasoning now. For those reasons, I respectfully dissent.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | John R. Grasso v. Gina M. Raimondo et al.<br><br>John R. Grasso v. Employees' Retirement System of Rhode Island. |
| **Case Number** | No. 2016-83-Appeal.<br>(PC 13-3121)<br><br>No. 2015-378-M.P.<br>(PC 14-4953) |
| **Date Opinion Filed** | February 12, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Joseph F. Penza, Jr., Esq. |
| | For Defendants:<br><br>Michael P. Robinson, Esq. |